644 P.2d 260

**STATE of Arizona, Appellant,**

v.

**Robert E. BARRETT, Appellee.**

**No. 1 CA–CR 5004.**

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 27, 1981.

Review Granted Dec. 22, 1981.

Thomas E. Collins, Maricopa County Atty. by Herbert Williams, Deputy County Atty., Phoenix, for appellant.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellee.

OPINION

OGG, Judge.

Appellant, the State of Arizona, filed this appeal alleging that the sentence imposed on appellee/defendant was improper pursuant to the provisions of A.R.S. § 13–604. We agree and remand this case for resentencing.

Defendant was charged with the offenses of first degree murder and conspiracy to commit first degree murder. Following a trial by jury, he was convicted of second degree murder and conspiracy to commit second degree murder, class 2 felonies. He was sentenced to serve fourteen years in the Arizona State Prison on each count, said sentences to run concurrently. The trial court found aggravating circumstances and imposed the maximum sentences allowable pursuant to the non-dangerous sentencing provisions of A.R.S. § 13–702(B). The State contends, however, that the facts showed that the murder was a dangerous nature offense, and that defendant should have been sentenced as a dangerous offender pursuant to A.R.S. § 13–604(G) and (K). Under the provisions of A.R.S. § 13–702(B), which govern sentencing for a non-dangerous offense, the minimum sentence for a class 2 felony is 5.25 years, the presumptive is 7 years, and the maximum is 14 years. If the provisions of A.R.S. § 13–604(G) and (K), governing sentencing for a dangerous offense are applicable in this sentencing, the minimum is 7 years, the presumptive is 10.5 years, and the maximum is 21 years, with no eligibility for parole or release on any other basis until at least two-thirds of the sentence imposed has been served.

The facts which give rise to this appeal show that on February 10, 1980, at approxi-

mately 4:00 a. m., Fredrick Herbst was shot and killed in the carport of his home by Steven Bolm and defendant. The shooting arose out of an argument which had occurred between Bolm, Bolm's girlfriend, whose name was Kelly, her father, and her uncle, the victim. At approximately 1:00 a. m. on the morning of the murder, Bolm and defendant went to Herbst's house to pick up Kelly. Bolm entered the house and found that Kelly and her father were arguing about the fact that Kelly had been staying out too late in the evenings. Herbst, Kelly's uncle, told Bolm that he should leave the house. Bolm did not leave and a few moments later, Kelly stated that she was going to move in with Bolm, and she and Bolm left together. As Bolm, Kelly and the defendant were returning to Bolm's house, Kelly was upset, and stated that she would like to kill her father and her uncle. Bolm asked Kelly if she really wanted to kill them, to which she answered "yes." When they arrived at Bolm's apartment, Bolm got a gun, and he and defendant planned the murder. There was substantial evidence introduced at trial that both Bolm and defendant had taken quaaludes and snorted cocaine during that time.

Approximately two hours later, defendant and Bolm left the apartment and returned to Herbst's residence. They had planned that defendant should shoot both men, since neither of them had previously met defendant. Herbst and Kelly's father were sitting in the kitchen at approximately 4:00 a. m. when they heard a loud bang on the back door. They went outside to check the noise, and Herbst was shot immediately. Kelly's father was unharmed. The paramedics were unable to revive Herbst. Officers of the Phoenix Police Department arrested Bolm and defendant at Bolm's residence shortly thereafter. The police found a large quantity of drugs at the residence and recovered the murder weapon. The weapon was introduced at trial. Further, ballistics examination established that the bullet which caused the death of Herbst had been fired by the same gun.

The State asserts that the trial court erred in failing to sentence defendant in accordance with the provisions of A.R.S. § 13–604(G) and (K). The defendant relies on the recent case of State v. Parker, 128 Ariz. 97, 624 P.2d 294 (1981), to refute the State's argument. Defendant asserts that before he may be sentenced pursuant to A.R.S. § 13–604(G), the dangerous nature of the offenses must be charged in the information or indictment and admitted or found to be true by the trier-of-fact. He further contends that there was no allegation of dangerousness contained in the information in this case and that no allegation of dangerousness was presented to the jury which would have allowed the jury to find him guilty of a dangerous nature offense. Defendant's assertions would be correct if the state were relying on the use of a deadly weapon in order to invoke the mandatory provisions of A.R.S. § 13–604.

However, defendant was charged with first degree murder as follows:

Robert Earl Barrett and Steven Jon Bolm, on or about the 10th day of February, 1980, knowing that their conduct would cause death, with premeditation caused the death of Fredrick Herbst, in violation of A.R.S. §§ 13–1105, 13–1101, 13–703, 13–301, 13–302, 13–303, and 13–604.

Defendant was convicted of second degree murder by the jury as a lesser included offense of first degree murder. The jury was instructed as follows:

The difference between first degree murder and second degree murder is that second degree murder does not require premeditation by the defendant. The crime of second degree murder requires proof that the defendant *intentionally killed another person or the defendant caused the death of another person by conduct which he knew would cause death or serious physical injury.* (Emphasis added)

A person commits second degree murder if without premeditation:

1. Such person intentionally causes the death of another person; or

2. Knowing that his conduct will cause death or serious physical injury, such person causes the death of another person; or

3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person.

A.R.S. § 13–1104(A).

In the instant case, the court did not instruct on the third definition of second degree murder, that is, reckless conduct which manifests extreme indifference to human life. Thus, the jury found defendant guilty of second degree murder pursuant to A.R.S. § 13–1104(A)(1) or A.R.S. § 13–1104(A)(2). The jury therefore concluded that defendant either intentionally caused the death of Herbst or that he caused the death of Herbst knowing that his conduct would cause death or serious physical injury. The mandatory sentencing provisions of A.R.S. § 13–604(G) are invoked "upon a first conviction of a class 2 or 3 felony involving use or exhibition of a deadly weapon or dangerous instrument or *upon conviction of a class 2 or 3 felony when the intentional or knowing infliction of serious physical injury upon another has occurred . . .*" (emphasis added).

A.R.S. § 13–604(K) provides that the penalties authorized pursuant to A.R.S. § 13–604 shall be substituted for the penalties otherwise prescribed by law when the dangerous nature of the felony is charged in the indictment or information and admitted or found by the trier-of-fact. The requirements of A.R.S. § 13–604(K) have been discussed in two recent cases—*State v. Tresize*, 127 Ariz. 571, 623 P.2d 1 (1980); *State v. Parker, supra.* In *Tresize*, the indictment specifically alleged that appellant was charged with armed robbery and a pistol was used in the commission of the offense. At the close of the trial, the trial court instructed the jury that the crime of armed robbery required proof of two elements: first, that the defendant committed a robbery; and second, that the defendant

was armed or used or threatened to use a dangerous instrument at the time of the offense. The jury in that case found the defendant guilty of armed robbery. In discussing the issue on appeal, the Supreme Court held that the requirements of A.R.S. § 13–604(K) were met in that the indictment alleged the requisite dangerousness, and that the jury necessarily concluded that the offense was a dangerous offense involving the use of a deadly weapon. The Supreme Court said that there was no necessity that a specific factual finding involving use or exhibition of a deadly weapon be made.

In *State v. Parker*, the jury found the defendant guilty of negligent homicide, and the trial court refused over the objection of the defendant to submit the allegation of dangerousness to the jury. The court there noted that the use of a deadly weapon or dangerous instrument was not presented to the jury as an element of the case and that therefore, unlike the situation in *Tresize*, the finding of guilt did not also inherently include a finding that the offense involved the use of a dangerous instrument or deadly weapon. The court concluded: "The finding of the dangerous nature of the felony must be submitted to the jury for a separate finding unless an element of the offense charged contains an allegation and requires proof of the dangerous nature of the felony." 624 P.2d at 296. It is our opinion that *Tresize* is controlling under the facts of this case.

In the instant case, A.R.S. § 13–604(K) requires that either the use of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury be charged in the indictment or information and admitted or found by the trier-of-fact. While defendant is correct in stating that the use of a deadly weapon or dangerous instrument was not alleged in the instant case, the information did allege that defendant caused the death of Fredrick Herbst, knowing that his conduct would cause death in violation of A.R.S. § 13–604. Thus, the dangerous nature of the felony was charged pursuant to

A.R.S. § 13–604(G). Moreover, the finding of the jury that defendant had committed the offense of second degree murder necessarily included a finding that defendant either intentionally killed the victim or that he caused the death of the victim by conduct which he knew would cause death or serious physical injury. The intentional or knowing infliction of serious physical injury is inherently an element of second degree murder, and the jury's finding required proof of the dangerous nature of the felony pursuant to A.R.S. § 13–604(G). Accordingly, we conclude that the trial court erred in refusing to sentence defendant as a dangerous offender in accordance with the provisions of A.R.S. § 13–604(G) and (K).

Therefore, the sentence imposed in this case is set aside, and the matter is remanded to the trial court for resentencing.

CONTRERAS, P. J., and CORCORAN, J., concur.