655 P.2d 1348

STATE of Arizona, Appellee,

v.

Otis Lee RODGERS, Appellant.

No. 1 CA–CR 5344.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 26, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Thomas A. Thinnes, P.A. by Thomas A. Thinnes, John A. Salvatore, Jr., Phoenix, for appellant.

## OPINION

CORCORAN, Judge.

Appellant Otis L. Rodgers was charged by indictment with twelve counts of receiving the earnings of a prostitute in violation of A.R.S. § 13–3204, one count of pandering as proscribed by A.R.S. § 13–3209 and one count of aggravated assault in violation of A.R.S. § 13–1204(A)(2) and (B), § 13–1203 and § 13–604. A jury found appellant guilty on all counts of receiving the earnings of a prostitute, guilty of pandering and not guilty of aggravated assault. Appellant filed a motion for new trial which was denied.

Four issues are raised on appeal:

1. Whether information provided by a victim-witness was sufficiently reliable to provide probable cause for issuance of a search warrant;

2. Whether evidentiary rulings made by the trial court during trial were in error

requiring reversal of appellant's convictions;

3. Whether the trial court correctly instructed the jury regarding the crimes of pandering and receiving the earnings of a prostitute;

4. Whether the trial court committed error in allowing the prosecution to allege prior convictions pursuant to A.R.S. § 13–604(H) after the trial of the consolidated counts.

We find error only in the allegation of prior convictions under A.R.S. § 13–604(H) subsequent to trial. Therefore, we affirm the convictions but remand for resentencing.

## SEARCH WARRANT

On August 4, 1980 complaining witness Carla J. Williams telephoned police to report that she had been assaulted by appellant. The assault, she told police, arose out of an argument involving a pimp-prostitute relationship between appellant and herself. The complainant alleged she had been encouraged by appellant to engage in prostitution in order to obtain money to regain custody of her children. Mrs. Williams stated that her earnings as a prostitute were turned over to appellant daily and recorded in a green ledger. According to Mrs. Williams, appellant struck her with his fists, a shoe and the butt of a handgun because her earnings as a prostitute had been decreasing.

Based on the affidavit of Detective Darrell E. Graham, a city court magistrate, authorized the issuance of a warrant for a search of appellant's home for seizure of the ledger and the gun.[1]

In this appeal, Rodgers argues that the trial court incorrectly denied his motion to

---

1. Detective Graham's affidavit contained the following information:

    Between the dates July 19, and August 3, 1980 the affiant learned the following information in the following manner:

    On August 4, 1980 Carla J. Williams, W/F, 9–28–58, a self-admitted and convicted Pros-

    titute gave Detective Darrell E. Graham 1795 your affiant the following information.

    Between July 19, 1980 and August 3, 1980 Carla J. Williams gave Otis L. Rodgers N/M, 9–27–48, all the monies that she had earned as a Prostitute per their agreement. The agreement being that she would Prostitute herself for Otis L. Rodgers he in turn would

suppress evidence obtained pursuant to search warrant because Carla Williams, a self-admitted prostitute, was not shown to be a "reliable informant" under tests set down in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The Arizona Supreme Court has generally defined the two-pronged test of *Aguilar-Spinelli* as follows:

> The magistrate must be informed of the underlying circumstances which formed the affiant's belief that a crime had been committed. In addition, the affiant must disclose the basis of his belief that the informer was credible or his information reliable.

*State v. Maddasion,* 130 Ariz. 306, 308, 636 P.2d 84, 86 (1981). Appellant, in the opening brief, concedes that the information appears on its face to be "trustworthy" inasmuch as the complaining witness was an eyewitness to the alleged criminal acts. *See United States v. Banks,* 539 F.2d 14 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). However, appellant argues that, regardless of the facial validity of the information, more is required because the "informant" was not shown to be reliable due to her prior convictions for prostitution and her self-admitted

involvement in the prostitution activities in this case.

In applying the law pertaining to search warrants, Arizona courts have reasoned that warrants are to be given a common sense reading, that they will not be defeated by a hypertechnical interpretation, and that "[i]nformant reliability need not be proved by additional facts when the informant is the victim." *State v. Robinson,* 127 Ariz. 324, 328, 620 P.2d 703, 707 (App. 1980), *cert. denied,* 450 U.S. 1044, 101 S.Ct. 1765, 68 L.Ed.2d 242 (1981). Further, in *State v. Archer,* 23 Ariz.App. 584, 534 P.2d 1083 (1975), this court stated:

> [T]he informant was an eyewitness to the crimes charged and was therefore a reliable informant possessing reliable information.

23 Ariz.App. at 586, 534 P.2d at 1085. Finally, a judicial determination of probable cause for issuing a search warrant will be upheld if there was a substantial basis for the magistrate's finding. *State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047 (1980).

Clearly, Mrs. Williams was the alleged victim of the assault charged here. Further, contrary to appellant's assertion in the opening brief, we can find no inference in the affidavit supporting the search warrant *(see* n. 1) that Carla Williams had a

---

return a portion of her earnings so that Carla J. Williams could fly her daughter to Phoenix from Indiana, in addition.

Your affiant has received prior information that Otis Lee Rodgers, N/M, 9–27–48, has been Receiving the Earnings of a Prostitute and Pandering.

That Otis L. Rodgers, N/M, 9–27–48 keeps a green ledger book with the word "Simplex" in gold lettering on the cover. Contained within the green ledger is a list of the monies earned by Carla J. Williams, W/F, 9–28–58 as a Prostitute which she turned over to Otis L. Rodgers.

The last entry into the green ledger was made on approximately August 1, 1980 when Carla J. Williams paid Otis L. Rodgers approximately ninety ($90) dollars which she earned for commiting acts of Prostitution. While living at 3532 West Lupine the home belonging to Otis Lee Rodgers, N/M, 9–27–48, Carla J. Williams, W/F, 9–28–48 observed the green ledger book on August 3,

1980 when Otis L. Rodgers added up the total monies earned by Carla J. Williams for acts of Prostitution she had committed and had paid Otis L. Rodgers for and on August 4, 1980 when she left 3532 West Lupine.

The green ledger book constitutes evidence tending to show that Otis L. Rodgers, N/M, 9–27–48 received the earnings of a prostitute and pandered, all in violation of Arizona Revised Statutes, a felony.

On August 3, 1980 Otis Lee Rodgers, N/M, 9–27–48 committed Aggravated Assault upon Carla J. Williams, W/F, 9–28–58, by striking her with his fists, a shoe and a pistol, causing a laceration on her lower inside lip, bruises on her upper and lower lip and raised areas on the back side of her head. The pistol is described as a small hand gun, silver in color, semi-automatic. The weapon was used in an Aggravated Assault in violation of Arizona Revised Statutes a felony.

plea bargaining motive in supplying the information. Rather, Mrs. Williams' admissions against her own interests, that she had engaged in acts of prostitution, lend credibility to her assertions. It is uncontroverted, as well, that Mrs. Williams was an eyewitness participant in the alleged prostitution activities.[2]

Based on the foregoing, we find sufficient indicia of Mrs. Williams' reliability as a complaining witness even if she is viewed as an "informant" under the *Aguilar-Spinelli* line of cases. Consequently, there is probable cause to uphold the validity of the search warrant for appellant's home. The denial of the motion to suppress was proper.

### EVIDENTIARY RULINGS

Appellant next alleges that the trial court made several errors in regard to admissibility of evidence during the course of the trial, the cumulative effect of which, he argues, should require reversal of his convictions.

First, appellant asserts reversible error in the trial court's granting of a *motion in limine* made by the state in which the state requested that appellant not be allowed to refer to an alleged bi-sexual relationship between the complaining witness Carla Williams and another unmarried female member of Rodgers' household, Wendy Liggett. The appellant argues that such evidence was relevant to show that appellant Rodgers did not compel, induce or encourage Carla Williams to engage in prostitution but that Mrs. Williams' bi-sexual relationship with Wendy Liggett was the sole reason for the presence of Mrs. Williams in Rodgers' home and for her prostitution activities.

■ The often reiterated test regarding alleged denial of the right to cross-examination is "whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of [the] witness." *State v. McElyea, Jr.,* 130 Ariz. 185, 187, 635 P.2d 170, 172 (1981) (*quoting State v. Fleming,* 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977)).

■ The above-referenced test is tempered by the general rule of law that rulings on the extent of cross-examination are within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of prejudice. *State v. McElyea, Jr., supra.* Other factors to be considered in this context are those set out in Rule 403, Rules of Evidence, which provides:

**Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In regard to the crime of pandering, it was alleged by indictment that appellant "compelled, induced or encouraged Carla Williams to lead a life of prostitution" in violation of A.R.S. § 13–3209. That section provides four instances in which a person can be guilty of pandering:

**§ 13–3209. Pandering; definitions; methods; classification**

A person is guilty of a class 5 felony who knowingly:

1. Places any person in the charge or custody of any other person for purposes of prostitution.

2. Places any person in a house of prostitution with the intent that such person lead a life of prostitution.

3. Compels, induces or encourages any person to reside with that person, or with any other person, for the purpose of prostitution.

**2.** As appellant was acquitted on the charge of aggravated assault, to which the evidence of

the gun was relevant, admission of the gun into evidence would appear to be harmless.

4. Compels, induces or encourages any person to lead a life of prostitution.

In his opening brief, appellant states that the alleged Williams-Liggett relationship was relevant to show "why Carla was living in the house." The question of who induced Mrs. Williams to reside in the Rodgers household appears to assume that appellant was charged under subsection (3) of A.R.S. § 13–3209, when, in fact, the language of the indictment is clearly voiced in terms of subsection (4) of the provision.

The issue of who induced, compelled, or encouraged Mrs. Williams *to reside in the Rodgers household* was not an issue which the state was required to prove under the indictment. Therefore, evidence pertaining to any such inference was of marginal, if any, relevance.

■ We have reviewed the record and have found that appellant did introduce evidence that Wendy Liggett and Carla Williams were friends and that they worked the same truckstop in Eloy, Arizona, engaging in acts of prostitution. Additionally, Miss Liggett testified that Carla Williams approached her, Wendy Liggett, regarding engaging in prostitution in order to earn money to obtain custody of her children. Thus we find that appellant was allowed to place before the jury the inference of a relationship between Liggett and Williams and the inference that Liggett was the person who encouraged Mrs. Williams to engage in a life of prostitution rather than Rodgers. The only aspect that the trial court refused to allow appellant to place before the jury was any allegation or inference that Mrs. Williams engaged in bi-sexual activities with Wendy Liggett. In light of *State v. McElyea, supra,* and rule 403, Rules of Evidence, we cannot say that the trial court abused its discretion in its ruling. Rather, we find a substantial basis upon which the trial court could find that the testimony was unduly inflammatory and likely to mislead the jury.

Appellant next argues that the trial court incorrectly sustained the state's objection to testimony that Mrs. Williams had informed to police on pimps in the past. Appellant's opening brief gives no argument or authority but refers this Court to the argument presented in the trial transcript.

Rule 31.13(c)(1)(iv), Rules of Criminal Procedure, requires that arguments on appeal be presented by "[a] concise argument containing the contentions of the party, the reasons therefor, *and necessary supporting citations.*" (Emphasis added.) *See, State v. Gretzler,* 126 Ariz. 60, 86–87, 612 P.2d 1023, 1049–50 (1980).

■ We disapprove of the method, used by appellant here, of incorporating arguments at trial by reference in the brief on appeal, especially where, as here, referenced trial argument contains no citations of authority.

In any case we find no fundamental error in the trial court's ruling.

At trial, defense counsel proposed to ask witness Detective Gerald Cash whether Carla Williams was considered to be a confidential informant of the vice department. The State objected on grounds of relevancy. The argument of counsel, held outside the presence of the jury, was as follows:

MS. [MACRE S.] MONSON [trial attorney for appellant]: My question to Detective Cash was going to be whether Carla Williams was considered to be a confidential informant of the vice department.

MR. [FRANK] DAWLEY [Assistant Attorney General]: My objection is on relevancy.

MS. MONSON: Would you like me to respond, Your Honor?

THE COURT: Yes.

MS. MONSON: I think Miss Williams' background, where her knowledge of the police and its workings and the system are very relevant to the issue as to her motivation in testifying and in turning Mr. Rodgers over to the police in the first place.

THE COURT: Well, assume the answer is yes, it's not a defense.

MS. MONSON: I'm not going anywhere—

THE COURT: Assume that it's no, that doesn't help you either. Is that an indicia of relevancy? He is objecting it's irrelevant, what is the relevancy?

MS. MONSON: I'm hoping in my closing I will be able to portray her not as someone who has had very little contact with the police and the system, who made this revelation to the police that morning out of wanting to help. In other words, she has put on the defense that she was induced into this relationship and that she only turned on Mr. Rodgers when she feared for her life, and I would simply like to bring out the fact that she has informed or she was considered a criminal informant before, that she knows how to do that.

THE COURT: Before or in this instance?

MS. MONSON: She had done it before. He knew she was a criminal informant when she was there that morning.

MR. DAWLEY: I object. I disagree with her conclusion that she was a criminal informant. She gave information one time in the past, and as Your Honor will recall, when we had the motion to suppress, she was not a paid informant. She was not a police informant, I don't see that relevancy as far as ammunition, to say the witness is familiar with the police system, that's all there. I mean, we have gone into her records in quite a lengthy detail, so she is not going to be prohibited from the argument she is seeking.

THE COURT: Sustain the objection.

Arizona cases establish that, while there is broad latitude in cross-examination, the scope and admissibility of such testimony is within the sound discretion of the trial judge. *Skinner v. Cardwell,* 564 F.2d 1381 (9th Cir.1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978); *State v. Evans,* 120 Ariz. 158, 584 P.2d 1149 (1978).

In *State v. Gretzler, supra,* the defense sought to inquire into the victim-witness's reasons for leaving employment with the Tucson police department. Upholding the trial court's exclusion of the evidence, the Supreme Court stated that the victim's job record did not contain any evidence relevant to Gretzler's guilt or innocence of kidnapping. 126 Ariz. at 87, 612 P.2d at 1051.

■ Here, we find no abuse of discretion in the trial court's ruling. The fact, as argued by trial counsel "that [Carla Williams] knew how to inform" on appellant does not make appellant's guilt or innocence any more likely. Rather, the thrust of the trial counsel's contention, as we see it, was to raise, by inference, something in the nature of an entrapment defense. If this was counsel's purpose, it was without foundation as appellant maintained throughout that he was innocent. *State v. Mendoza,* 109 Ariz. 445, 511 P.2d 627 (1973). The testimony was properly excluded both on grounds of relevancy and foundation.

Finally, appellant alleges that in the course of trial reversible error occurred when the trial court limited cross-examination of the complaining witness regarding her past acts of prostitution. Carla Williams testified at length regarding her past life of prostitution. She stated, however, that in the past two years immediately preceding her contact with appellant, she had been married and had a child and had not been engaged in prostitution. On appeal it is alleged that the trial court incorrectly limited defense counsel's cross-examination regarding Mrs. Williams' means of support *during those two years.* Appellant argues that such information might have tended to show that she was engaged in prostitution at or about the time she alleged that Rodgers induced or encouraged her to return to prostitution.

■ Contrary to appellant's assertion, the record shows that the trial court did not

bar questions and answers pertaining to Carla Williams' work activities during the two-year period in question.

■ At one point defense counsel attempted to ask Mrs. Williams how many acts of prostitution she committed in *1975.* The objection to this question was properly sustained. Since Williams admitted she was a prostitute and earned her living as such in 1975, we find no abuse of discretion in sustaining the state's objection. More importantly the question had nothing to do with Williams' activities *during the two years prior to 1980,* the time of the alleged offenses. Appellant has objected only to exclusion of evidence pertaining to those two years, on the grounds discussed above.

Another question to which objection was made and sustained on grounds of immateriality was as follows:

> Q. Okay. During those two years you stated you were married, did your husband support you for those two years?
>
> MR. DAWLEY: Objection, immaterial.
>
> THE COURT: Sustained.

■ We agree that the activities of Mrs. Williams' *husband* for the two years in question is immaterial to the question of what Mrs. Williams' behavior was during that time period. It appears that the question was intended to raise, by inference, an indirect supposition that if Mrs. Williams was not receiving support from her husband that she must have been engaging in acts of prostitution. We find that such an inference does not follow, especially since the testimony showed that Williams had worked at other various employments during the relevant two-year period, such as working at a dry cleaning establishment. The trial court committed no error in deeming the question immaterial and sustaining the state's objection.

As we find no error in any of the trial court's challenged evidentiary rulings, there can be no cumulative effect of error. *State v. Johnson,* 122 Ariz. 260, 594 P.2d 514 (1979).

## INSTRUCTIONS

We turn next to appellant's argument that the trial court incorrectly instructed the jury regarding the elements of the crimes of receiving the earnings of a prostitute. The trial court instructed the jury as follows:

> The crime of receiving the earnings of a prostitute requires proof that the defendant knowingly received money or other valuable thing from the earnings of a person engaged in prostitution.

Arguing that this instruction could make anyone guilty of receiving the earnings of a prostitute, as a doctor or a grocery store clerk, appellant contends that the trial court was obligated to add the following words requested by appellant: "living or deriving support or maintenance in whole or in part from the earnings or proceeds of her prostitution."

A.R.S. § 13–3204, as amended 1978, defines the crime as follows:

**Receiving earnings of prostitute; classification**

> A person who knowingly receives money or other valuable thing from the earnings of a person engaged in prostitution, is guilty of a class 5 felony.

The trial court's instruction follows precisely the language of the statute.

■ Interpreting a prior, but similar, provision, the Arizona Supreme Court has held that even if the statute, without exception, makes criminal the act of receiving the earnings of a prostitute even for a legitimate purpose, the statute would still be constitutional. *State v. Green,* 60 Ariz. 63, 131 P.2d 411 (1942). The current legislation does not require the state to prove that the defendant used the proceeds for his own support or maintenance. Further, defense counsel was allowed without objection to argue to the jury in closing argument that they should not find appellant guilty of receiving the earnings of a prostitute unless they found that he used it for his own support or maintenance. We find no error

in the trial court's instruction and we find no prejudice in view of the statements made in appellant's closing argument.

Appellant next challenges the court's instruction pertaining to pandering. The trial court instructed the jury regarding pandering as follows:

> The crime of pandering requires proof that the defendant knowingly compelled, induced or encouraged another to lead a life of prostitution.

Defendant requested a different instruction which read as follows:

> The crime of pandering requires proof that the defendant knowingly compelled, induced, or encouraged another *who would not otherwise have done so* to lead a life of prostitution.

■ We do not agree that the trial court was required to give defendant's requested instruction. The 1978 revision of the criminal code introduced a change in the law pertaining to what comprised the crime of pandering. Former section 13–591 and cases construing that section required a showing of restraint, compulsion or force.[3] In the 1978 revision, which is set out in full earlier in this opinion, the words induce and encourage have been added to §§ (3) and (4) of the statute thereby expanding the type of activity which can be illegal as defined by the statute proscribing pandering. As noted previously in this opinion, the language of the indictment clearly referred only to A.R.S. § 13–3209(4). The state was not required to show that the complaining witness or prostitute involved was forced into prostitution. Rather, it was sufficient to show that the defendant encouraged the individual to lead a life of prostitution.

■ Viewed in a light most favorable to upholding the jury's verdict, the testimony showed that Mrs. Williams had first been employed by Rodgers as a bartender. After allowing her to work as a bartender and manager for several days, and knowing that she needed the money in a hurry to obtain the custody of her children, appellant exerted a form of duress upon Carla Williams by firing her from the bartender-management job and suggesting that she could earn money in a hurry by engaging in acts of prostitution. We find there was substantial evidence in the record in this case to support a conclusion that appellant not only encouraged but induced Carla Williams to live a life of prostitution.

■ As charged pursuant to the statute, the crime was committed by the acts of compelling, inducing or encouraging prostitution, regardless of Williams' predisposition. Consequently, the state was not required to prove, nor was the trial court required to instruct the jury, that appellant was guilty of pandering only if the complaining witness would not have engaged in prostitution except for the encouragement or inducement of appellant.

We find no error in the trial court's complained of instructions regarding the receiving of the earnings of a prostitute and pandering.

## ALLEGATIONS OF PRIOR CONVICTIONS

Appellant's final argument is that the trial court committed error in allowing the state to designate or allege prior convictions following the trial.

A.R.S. § 13–604(K) allows the trial court to permit the allegation of a prior convic-

---

3. Former A.R.S. § 13–591 (1956) provided:

**Pandering; definition; methods; punishment**
A. A person is guilty of a felony who:
1. Places a female in the charge or custody of any other person for immoral purposes.
2. Places a female in a house of prostitution with the intent that she lead a life of prostitution.

3. Compels a female to reside with him, or with any other person, for immoral purposes, or for the purpose of prostitution.
4. Compels a female to lead a life of prostitution.
B. A person violating any provision of this section shall be punished by a fine of not less than one thousand dollars and by imprisonment in the state prison for not less than one nor more than ten years.

tion *at any time prior to trial.* A.R.S. § 13–604(H) contemplates that consolidated counts can be used to enhance punishment under the statute.[4] In this case, the allegation by the state as to the consolidated counts was made only after the guilty verdicts were returned.

■ The state argues that a prior conviction cannot be alleged until it *is* a conviction. Upon close review we find the state's argument unpersuasive. The procedure of making such allegations before trial as to consolidated counts was utilized in *Davis v. Superior Court,* 126 Ariz. 568, 617 P.2d 520 (1980), and *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980). *See also State v. Rybolt,* 133 Ariz. 276, 650 P.2d 1258 (App. 1982).

The comments to the revised Arizona Criminal Code pertinent to present A.R.S. § 13–604(H) observe:

> [I]f the offender commits two robberies on two different days and the felonies are consolidated for trial, a conviction for the first robbery may be used to invoke the provisions of § 703 [currently § 13–604(H)] in the event the felon is convicted on the second count. . . .

Arizona Criminal Code Commission, Arizona Revised Criminal Code, § 703, at 97 (1975).

The manner in which prior convictions are alleged for enhancement purposes is set out in A.R.S. § 13–604(K) which requires that the allegations be made prior to trial.

As a policy matter the defendant should know the full extent of the potential punishment that he faces before trial.

The parties did not enter into a plea agreement based on the indictment, without regard to the allegation of prior conviction. If the allegation had been made before trial, a plea agreement may have been reached. In many cases it may be necessary for the extent of the possible punishment upon conviction to be determined prior to trial in order to establish the size of the jury required by A.R.S. § 21–102 and Arizona Constitution Art. 2, § 23. *See, e.g., State v. Dixon,* 127 Ariz. 554, 622 P.2d 501 (1980); *State v. Smith,* 126 Ariz. 534, 617 P.2d 42 (1980).

Further, it is not persuasive that an allegation of a prior conviction cannot be made under A.R.S. § 13–604(H) before actual conviction. In actuality A.R.S. § 13–604(H) allows the state to allege that at time of sentencing there *will* be a prior conviction that the state will be able to prove in order to enhance sentence pursuant to that provision. It is an allegation, like the other allegations in the information, which has to be proved.

■ Accordingly, we hold that all allegations of prior convictions, including those made pursuant to A.R.S. § 13–604(H) must be made prior to trial and that the trial court was incorrect in denying appellant's motion to strike the designation of prior

---

**4.** A.R.S. §§ 13–604(H) and 13–604(K), as amended 1978, provide:

**Dangerous and repetitive offenders**

. . . .

H. Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.

. . . .

K. The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction or the dangerous nature of the felony is charged in the *indictment or information and admitted* or found by the trier of fact. The court in its

discretion may allow the allegation of a prior conviction *or the dangerous nature of the felony at any time prior to trial,* provided that when the allegation of a prior conviction is filed, the state must make available to the defendant a copy of any material or information obtained concerning the prior conviction. Before the trial on the charge of the previous conviction, the charge of previous conviction shall not be read to the jury. For the purposes of this subsection, "Dangerous nature of the felony" means a felony involving the use or exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another. (Emphasis added.)

offenses filed by the state after trial in this case. This result is not inconsistent with *State v. Barrett,* 132 Ariz. 106, 644 P.2d 260 (App.1981), *modified,* 132 Ariz. 88, 644 P.2d 242 (1982). In *Barrett,* the defendant received ample prior notice in the language of the charging document that the enhancement provision of A.R.S. § 13-604(G) would be invoked to seek an enhanced sentence.

In this case, by contrast, the indictment only gave notice of A.R.S. § 13-604 in connection with the alleged aggravated assault, in reference to the use of a gun. Appellant was acquitted of that charge. Appellant received no notice in the charging document or otherwise prior to trial that A.R.S. § 13-604(H), *consolidated counts,* would be used to enhance punishment. Notice was not given until subsequent to the verdicts.

The state argues that the sentence for pandering was not enhanced by application of A.R.S. § 13-604(H) and should, therefore, be left undisturbed. However, viewing the sentencing as a whole, it is impossible to speculate regarding the effect of the legal error on the trial judge's sentencing decision as to each of the convictions. Since the trial court did apply the enhancement provisions of A.R.S. § 13-604(H) in sentencing appellant, all of the convictions must be remanded for resentencing proceedings consistent with this opinion.[5]

The judgments of guilt are affirmed. The sentences are vacated and the convictions are remanded to the trial court for resentencing in accordance with this opinion.

OGG, P.J., and GRANT, J., concur.

---

5. Appellant, in his reply brief, raises an issue not raised in the opening brief that the trial court, contrary to the requirements of A.R.S. § 13-708, failed to state his reasons for requiring that appellant serve the sentence on the counts pertaining to receiving the earnings of a prostitute consecutive to the sentence imposed for pandering. We need not discuss this issue as it is unlikely that, upon resentencing, the trial court will fail to follow the requirements of § 13-708.