31 P.3d 848

**STATE of Arizona, Appellant,**

v.

**Roy David HENSLEY, Appellee.**

**No. 1 CA–CR 00–0508.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 20, 2001.

Richard M. Romley, Maricopa County Attorney, by Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender, by Louise Stark, Deputy Public Defender, Phoenix, Attorneys for Appellee.

**OPINION**

TIMMER, Presiding Judge.

¶ 1 After Roy David Hensley violated the terms of his probation imposed under "Proposition 200," Ariz.Rev.Stat. ("A.R.S.") § 13–901.01 (Supp.2000), the trial court terminated his probation as unsuccessful. The State of Arizona appeals that order, contending that the court erred by failing to revoke Hensley's probation and impose a prison term in light of his prior convictions for violent crimes, which made him ineligible for probation under A.R.S. § 13–901.01(A).

¶ 2 We must decide whether Hensley was disqualified from mandatory probation under A.R.S. § 13–901.01(A) in light of his earlier violent-crime convictions, even though the State failed to allege and prove them before Hensley's convictions for possession of dangerous drugs and drug paraphernalia. We hold that Hensley was eligible for probation under A.R.S. § 13–901.01(B) because the State failed to allege and prove the convictions as required by A.R.S. § 13–604.04(A) (Supp.2000). Consequently, the trial court did not err by refusing to revoke Hensley's probation and impose a prison term. However, the court erred by terminating Hensley's probation rather than continuing it and imposing additional terms, as required by A.R.S. § 13–901.01(E). We therefore vacate the court's order terminating probation and remand with instructions to reinstate Hensley's probation and impose necessary additional conditions.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶ 3 On July 6, 1999, the State charged Hensley with possession of dangerous drugs, a class four felony, and possession of drug paraphernalia, a class six felony. The State did not allege that Hensley had been convicted of or indicted for a violent crime. Two months later, the State and Hensley entered into a plea agreement in which Hensley agreed to plead no contest to both charges and waive his right to a preliminary hearing. The parties did not agree that Hensley's convictions would be treated as Proposition 200 offenses. On November 10, 1999, the

trial court accepted the plea agreement and found Hensley guilty of both charges.

¶4 The pre-sentence report stated that Hensley had been "convicted of two armed robberies in 1987 and was sentenced to ten and a half years prison." In light of these convictions, the State contended that Hensley was ineligible for mandatory probation under A.R.S. § 13–901.01(A) and therefore recommended a prison term. The court rejected this recommendation and, instead, suspended imposition of sentence and placed Hensley on four years of intensive probation for the first charge and two years of supervised probation for the second charge. The record does not reflect whether the court treated the crimes as Proposition 200 offenses.

¶5 On December 23, 1999, the State petitioned the court to revoke Hensley's probation because he had violated its terms. Hensley admitted the violation, and the court reinstated him on probation. The State filed a second petition to revoke probation on April 19, 2000. At a hearing held on June 21, 2000, Hensley admitted that he had violated the terms of his probation by failing to successfully complete a substance abuse counseling program. Based on this admission, the trial court found that Hensley had violated the terms of his probation. The court then ruled that Hensley's convictions were for Proposition 200 offenses, and the court could not, therefore, revoke probation and impose a term of imprisonment unless he had been convicted of or indicted for a violent crime. A.R.S. § 13–901.01(B). The court further ruled that the State was required by A.R.S. § 13–604.04(A) to allege and prove any such convictions or indictments prior to Hensley's convictions in order to disqualify him from mandatory probation under A.R.S. § 13–901.01(A). Based on its review of Hensley's prior record, the court noted that although he had "arguably" committed prior violent crimes, the State had failed to allege and prove those convictions before Hensley was convicted of the drug offenses. For this reason, the court declined

to revoke Hensley's probation and impose a prison term.

¶6 The court next proclaimed its only options were to continue Hensley's probation or terminate it. The court then asked Hensley if he "sincerely want[ed] to utilize probation resources or … just [be] terminated from probation supervision and left to deal with [his] addiction on [his] own." After Hensley stated he preferred to be released from probation, the court terminated it. This appeal followed. We review the trial court's order *de novo* because the issues involve statutory interpretation and thus present questions of law. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

## DISCUSSION

### I. Applicability of Proposition 200

¶7 The State argues that the trial court erred by concluding it could not revoke Hensley's probation and impose a prison term because the State had failed to allege and prove a historical violent crime conviction prior to Hensley's convictions. According to the State, A.R.S. § 13–901.01(B)[1] allows the court to remove a defendant with a historical violent crime conviction from eligibility for Proposition 200 probation even if the State had failed to allege and prove the conviction.

¶8 The State relies on this court's holding in *Bolton v. Superior Court,* 190 Ariz. 201, 945 P.2d 1332 (App.1997), to support its contention. In *Bolton,* the trial court rejected a plea that required probation because former A.R.S. § 13–901.01(F) (1997) excluded defendants from Proposition 200 probation if they had previously been convicted two or more times of any offense listed in that subsection. 190 Ariz. at 202, 945 P.2d at 1333. The defendant argued that the trial court erred because the State had failed to allege such convictions as required by A.R.S. § 13–604(P) (Supp.1996), "which provides for enhanced sentencing if prior convictions are 'charged in the indictment or information and

1. Section 13–901.01(B) provides as follows:
    Any person who has been convicted of or indicted for a violent crime as defined in § 13–604.04 is not eligible for probation as provided

for in this section but instead shall be sentenced pursuant to the other provisions of chapter 34 of this title.

admitted or found by the court....'" *Id.* at 202 03, 945 P.2d at 1333–34 (quoting A.R.S. § 13–604(P)).

¶ 9 On appeal, this court rejected the defendant's argument and held that a trial court may reject a plea requiring Proposition 200 probation if the defendant had prior convictions, even though the State had not alleged them. *Id.* at 203, 945 P.2d at 1334. Significantly, the court opined as follows:

Unlike section 13–604, section 13–901.01 does not require that the State allege prior convictions before they are deemed to exist. Therefore, we hold that whether a defendant is entitled to be sentenced pursuant to section 13–901.01 is a matter of law to be decided by the court; it is not a matter of pleading or plea bargaining to be decided by the State.

*Id.* The court did not address the impact of A.R.S. § 13–604.04, which was enacted in 1997. Regardless, the State urges us to similarly conclude that A.R.S. § 13–901.01 did not require it to allege prior to Hensley's convictions that he had been convicted of or indicted for a violent crime in order to disqualify him for sentencing under Proposition 200.

¶ 10 This court recently addressed the State's argument raised under *Bolton* and rejected it. In *State v. Benak,* 199 Ariz. 333, 18 P.3d 127 (App.2001) (review denied May 23, 2001), we were asked to decide whether the State was required by A.R.S. § 13–604.04 to allege before trial that the defendant was ineligible for probation on his drug-possession conviction because he had previously been convicted of a violent crime. 199 Ariz. at 334, ¶ 5, 18 P.3d at 128. Section 13–604.04 provides, in relevant part, as follows:

A. The allegation that the defendant committed a violent crime shall be charged in the indictment or information and admitted or found by the court. The court shall allow the allegation that the defen-

dant committed a violent crime at any time before the date the case is actually tried. . . .

B. For the purpose of this section, "violent crime" includes any criminal act that results in death or physical injury or any criminal use of a deadly weapon or dangerous instrument.

¶ 11 The *Benak* court held that A.R.S. § 13–604.04 applies to A.R.S. § 13–901.01 and requires the State to allege before trial that a defendant has committed a violent crime in order to later exclude that defendant from probation eligibility pursuant to A.R.S. § 13–901.01(B). 199 Ariz. at 336–37, ¶ 14, 18 P.3d at 130–31. The court based its holding on the reference in A.R.S. § 13–901.01(B) to A.R.S. § 13–604.04, the legislative history of the two provisions, considerations of fundamental fairness, and language analogous to A.R.S. § 13–901.01(B) present in A.R.S. § 13–604(P), which generally governs allegations of prior convictions, dangerousness, and commission of offenses while on pretrial release. *Id.* at 335–37, ¶¶ 10–14, 18 P.3d at 129–31. The court distinguished *Bolton* by confining its holding to the plea bargaining context.[2] *Id.* at 336, ¶ 12, n. 3, 18 P.3d at 130, n. 3.

▌ ¶ 12 We agree with the holding in *Benak* and do not repeat its analysis. Accordingly, we reject the State's argument and hold that the trial court did not err by refusing to revoke Hensley's probation and impose a prison term. In light of our decision, we do not address Hensley's argument that his prior convictions were not "violent crimes" as defined under A.R.S. § 13–604.04. However, we are compelled to address points raised by our dissenting colleague.

¶ 13 The Dissent contends *Benak* was wrongly decided because A.R.S. § 13–604.04 was enacted to effectuate only A.R.S. § 41–1604.15 (1999),[3] which was amended at the

**2.** *Bolton* is also distinguishable because that court did not address the applicability of A.R.S. § 13–604.04(A) to A.R.S. § 13–901.01(B). Thus, we disagree with the Dissent that *Bolton* governs the issue before us. Dissent, ¶ 30.

**3.** Section 41–1604.15 applies to treatment of prisoners by the State Department of Corrections and provides as follows:

Notwithstanding any law to the contrary, any person who is convicted of a violent crime as defined in § 13–604.04 that is committed while the person is under the influence of marijuana, a dangerous drug or a narcotic drug as defined in § 13–3401 is not eligible for probation or release on any basis until the entire sentence has been served. Pursuant to § 41–1604.07, the director shall include any such person in a noneligible earned release

same time the legislature enacted A.R.S. § 13–604.04. Dissent, ¶ 26. This conclusion is warranted, the Dissent asserts, by the timing of the enactment of A.R.S. § 13–604.04 and because that provision deals with allegations that a defendant "committed" a violent crime, not that he was convicted of or indicted for such an offense as set forth in A.R.S. § 13–901.01(B). Dissent, ¶ 27. But the Dissent overlooks other factors suggesting that the legislature intended A.R.S. § 13–604.04(A) to apply to A.R.S. § 13–901.01(B).

¶ 14 First, facets of the legislative history for A.R.S. § 13–604.04, ignored by the Dissent, indicate that the legislature intended that provision to apply to A.R.S. § 13–901.01(B). Sections 13–604.04, 13–901.01, and 41–1604.15 were all adopted as part of the statutory scheme enacted to implement Proposition 200. *Benak,* 199 Ariz. at 336, ¶ 11, 18 P.3d at 130. Prior to enactment of A.R.S. § 13–604.04, A.R.S. § 41–1604.15 (then A.R.S. § 41–1604.14) contained a definition of "violent crime" that was identical to the definition now set forth in A.R.S. § 13–604.04(B). *Id.* As pointed out in *Benak,* A.R.S. § 13–901.01(B) originally referred to the definition of "violent crime" contained in former A.R.S. § 41–1604.14(B). *Id.* In 1997, the legislature renumbered A.R.S. § 41–1604.14 as A.R.S. § 41–1604.15, removed the definition of "violent crime" from that section, and placed the definition in newly-enacted A.R.S. § 13–604.04, which also established a procedure for alleging that a defendant had committed a violent crime. *Id.;* 1997 Ariz. Sess. Laws, ch. 6, §§ 1, 3. The legislature then changed A.R.S. § 41–1604.15, and later A.R.S. § 13–901.01(B), by referring to A.R.S. § 13–604.04 for the definition of "violent crime." *Id.;* 1999 Ariz. Sess. Laws, ch. 261, § 12.

¶ 15 If the legislature had intended to limit application of A.R.S. § 13–604.04(A) to A.R.S. § 41–1604.15, as the Dissent maintains, we discern no reason for removing the definition of "violent crime" from Title 41 and placing it in Title 13, along with a new proce-

dure for alleging commission of such crimes. Instead, we conclude that the legislature's actions demonstrate an intent to also apply A.R.S. § 13–604.04 to provisions other than A.R.S. § 41–1604.15. *See McCandless v. United S. Assurance Co.,* 191 Ariz. 167, 174, 953 P.2d 911, 918 (App.1997) (when legislature amends existing statute, court presumes legislature intended some change in existing law). Because the only provision in Title 13 that refers to "violent crime," other than A.R.S. § 13–604.04, is A.R.S. § 13–901.01(B),[4] we conclude that the legislature intended the former statute to apply to the latter. Thus, contrary to the Dissent's view, the legislative history of A.R.S. § 13–604.04 supports the holding in *Benak.*

¶ 16 Second, we believe that the Dissent unduly restricts the meaning of A.R.S. § 13–604.04(A) by interpreting the phrase "the defendant committed a violent crime" as excluding an allegation of a prior conviction of a violent crime. Dissent, ¶ 27. If the State alleges and proves that a defendant was convicted of a violent crime, *see* A.R.S. § 13–901.01(B), it necessarily alleges the defendant "committed" the offense. The conviction proves the commission of the offense.

¶ 17 Moreover, the Dissent's narrow construction of the term "committed" contradicts its assertion that A.R.S. § 13–604.04(A) applies only to A.R.S. § 41–1604.15. Like § 13–901.01(B), § 41–1604.15 applies to persons "convicted of a violent crime." The latter statute also requires proof that the crime was "committed while the person [was] under the influence" of specified drugs. Thus, if the Dissent's interpretation of § 13–604.04(A) is correct, mere proof that a person "committed" a violent crime would not invoke § 41–1604.15. Similarly, under the Dissent's view, proof that a person "committed" a violent crime would not invoke A.R.S. § 41–1604.16, which refers only to persons "convicted" of such offenses. Consequently, the Dissent's interpretation of "committed" in A.R.S. § 13–604.04(A) would render the pro-

credit class and the prisoner is not eligible for placement in an eligible earned release credit class.

4. The only provision outside Title 13, other than A.R.S. § 41–1604.15, that mentions "violent

crime" is A.R.S. § 41–1604.16 (1999). Section 41–1604.16(B) provides, in relevant part, that persons previously convicted of a violent crime "as defined in § 13–604.04" are ineligible for parole or community supervision.

vision inapplicable to any statute dealing with "violent crimes"-a result that could not have been intended by the legislature. *See U.S. West Communications, Inc. v. Ariz. Dep't of Revenue*, 193 Ariz. 319, 323, ¶ 16, 972 P.2d 652, 656 (App.1998) ("[T]he cardinal rule of statutory construction [is] that statutes should be interpreted so that no clause, sentence, or word is rendered superfluous or void."). For these reasons, we disagree with the Dissent that the legislature's use of the term "committed" evidenced an intent that A.R.S. § 13–604.04 not apply to A.R.S. § 13–901.01(B).

¶ 18 The Dissent also contends that *Benak* "strains logic" by concluding that the reference in A.R.S. § 13–901.01(B) to the definition of "violent crime" imposes the procedural requirements of A.R.S. § 13–604.04 on the State in Proposition 200 cases. Dissent, ¶ 29. But even assuming the Dissent is correct, the result is unchanged. The legislature was not required to specifically incorporate A.R.S. § 13–604.04(A) into A.R.S. § 13–901.01(B) to apply the former statute in Proposition 200 cases. Indeed, A.R.S. §§ 41–1604.15 and – 1604.16 do not expressly incorporate A.R.S. § 13–604.04(A). Instead, they also refer to A.R.S. § 13–604.04 for the definition of "violent crime."

¶ 19 Additionally, when the legislature enacted A.R.S. § 13–604.04, it originally amended A.R.S. § 41–1604.16 to refer to the definition of "violent crime" in A.R.S § 13–604.04, *subsection B.* 1997 Ariz. Sess. Laws, ch. 6, § 4. Approximately one month later, the legislature amended A.R.S. § 41–1604.16 and removed the reference to "subsection B." 1997 Ariz. Sess. Laws, ch. 246, § 7. The legislature's act in specifically expanding reference to A.R.S. § 13–604.04 beyond the subsection containing the pertinent definition further supports the *Benak* court's holding. *See McCandless*, 191 Ariz. at 174, 953 P.2d at 918; *State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989) ("A statute should be explained in conjunction with other statutes which relate to the same subject or have the same general purpose.").

## II. Termination of Probation as "Unsuccessful"

¶ 20 The State correctly points out that A.R.S. § 13–901.01(E) requires the trial court to assess new conditions of probation for persons who violate probation imposed under Proposition 200. Although the State fails to specifically argue that the trial court erred by terminating Hensley's probation rather than imposing new conditions of probation, we address this issue because the State placed the legality of Hensley's disposition at issue, and we conclude that the court imposed an illegal sentence by failing to follow A.R.S. § 13–901.01(E). *See State v. Dawson*, 164 Ariz. 278, 281, 792 P.2d 741, 744 (1990) ("[T]he trial court's failure to impose a legal sentence is one of those rare situations from which the state can seek review even if it failed to object in the trial court."); *State v. Brewer*, 170 Ariz. 486, 493, n. 4, 826 P.2d 783, 790 (1992) (appellate court's power to correct illegally lenient sentence predicated upon appeal filed by State); *State v. Falco*, 162 Ariz. 319, 321, 783 P.2d 258, 260 (App. 1989) (A sentence that does not fall within our statutory scheme is unlawful; in this context, an order for probation is a "sentence.").

¶ 21 The trial court does not have inherent authority to grant probation. Rather, the court derives its power from the legislature, and its exercise must conform to the statutory authorization. *State v. Woodruff*, 196 Ariz. 359, 360, ¶ 8, 997 P.2d 544, 545 (App.2000). Generally, once the court finds that a defendant has violated probation, its only options are to revoke, modify, or continue the terms of probation. *State v. Lyons*, 167 Ariz. 15, 17, 804 P.2d 744, 746 (1990); A.R.S. § 13–901(C) (Supp.2000); Ariz. R.Crim. P. 27.7(c)(2). Moreover, if a defendant violates the terms of intensive probation, the court's alternatives are limited to revocation or modification of terms. A.R.S. § 13–917(B) (Supp.2000). No statute authorizes the court to terminate probation as unsuccessful, as it did in this case. *Cf.* A.R.S. § 13–901(E) (authorizing court to terminate probation if "the ends of justice will be served and if the conduct of the defendant on probation warrants it.").

¶ 22 The court's options are further curtailed if a defendant violates the terms of probation imposed under A.R.S § 13–901.01. *See Evans v. Young*, 135 Ariz. 447, 449, 661 P.2d 1148, 1150 (App.1983) ("When the provisions of a general statute conflict with those

of a special statute ... the special statute prevails."). Section 13–901.01(E) provides as follows:

A person who has been placed on probation under the provisions of this section and who is determined by the court to be in violation of probation *shall* have new conditions of probation established by the court. The court *shall* select the additional conditions it deems necessary, including intensified drug treatment, community service, intensive probation, home arrest, or any other such sanctions short of incarceration.

(Emphasis added.) The plain language of A.R.S. § 13–901.01(E) states that the court "shall" impose additional conditions on one who violates the terms of probation. The word "shall" is a mandatory term. *In re Navajo County Juv. Action JV–94000086*, 182 Ariz. 568, 570, 898 P.2d 517, 519 (App. 1995) ("The ordinary meaning of the word 'shall,' in the context of a statute, is to impose a mandatory duty."). Thus, the clear language of A.R.S. § 13–901.01(E) required the trial court to impose additional terms of probation on Hensley, not terminate his probation as "unsuccessful." Because the court did not follow the mandate of A.R.S. § 13–901.01(E), the disposition was unlawful.

¶ 23 We appreciate the obstacles faced by the trial court in dealing with persons who repeatedly violate probation in Proposition 200 cases. However, as set forth in A.R.S § 13–901.01(E), the solution to this problem cannot be to reward a violator by releasing him from probation. Instead, the court should employ all legally available means to penalize an offending probationer. Accordingly, we remand to the trial court with instructions to reinstate Hensley on probation and impose necessary additional terms.

## CONCLUSION

¶ 24 For the foregoing reasons, we hold that the trial court did not err by refusing to revoke Hensley's probation and impose a prison term. However, we also decide that the court incorrectly terminated Hensley's

probation as "unsuccessful." Consequently, we vacate the court's order terminating probation and remand to the trial court with instructions to reinstate Hensley's probation and impose necessary additional conditions.

CONCURRING: EDWARD C. VOSS, Judge.

THOMPSON, Judge, dissenting.

¶ 25 In my view, *State v. Benak* was wrongly decided. Hensley is not protected by Proposition 200 and should have been sentenced to prison after he violated probation on numerous occasions. His probation should not have been simply terminated without imprisonment. I would reverse the trial court's contrary conclusion.

¶ 26 In *Benak* another department of this court determined that notice that a defendant would not be entitled to mandatory probation under § 13–901.01 because of a prior violent offense must be provided by an appropriate formal pretrial allegation pursuant to § 13–604.04. 199 Ariz. at 337, ¶ 14, 18 P.3d at 131. This determination depended on § 13–901.01's reference to the definition of "violent crime" in § 13–604.04, and on two cases requiring pretrial allegations of prior convictions, *State v. Rodgers*, 134 Ariz. 296, 306, 655 P.2d 1348, 1358 (App.1982), and *State v. Guytan*, 192 Ariz. 514, 522–23, 968 P.2d 587, 595–96 (App.1998). *See* 199 Ariz. at 335–37, ¶¶ 10, 14, 18 P.3d at 129–31. Both *Rodgers* and *Guytan* involved allegations pursuant to a statute which expressly requires timely pretrial allegations. *See* A.R.S. § 13–604(P). Therefore those cases do not help determine whether such an allegation is required under § 13–901.01, which has no such express requirement. And a close examination of the pertinent statutory language reveals that the allegation requirement of § 13–604.04 is not referable to § 13–901.01, which preceded it chronologically, but rather to the substance of § 41–1604.15 which was amended exactly contemporaneously with the enactment of § 13–604.04 in House Bill 2475 and published at 1997 Arizona Session Laws, ch. 6, § 3.[5]

---

5. The majority asserts that, in moving the definition of "violent crime" from Title 41 to Title 13 in 1997, the legislature indicated its intention to have the new § 13–604.04 apply to situations covered in Title 13, such as those arising under

section 13–901.01. But § 13–901.01 continued for two years after the enactment of § 13–604.04 to refer to Title 41 for a definition of "violent crime." If the legislature meant to signal that

¶ 27 Since December 1996, after its enactment by voter initiative, § 13–901.01 has mandated probation for personal drug use under subsection (A), unless the offender was a previous violent criminal pursuant to subsection (B) or was a repetitive offender pursuant to subsection (G). Section 13–604.04 only came into existence in 1997, when it was enacted in tandem with an extensive rewrite of § 41–1604.15, which requires mandatory prison for violent crimes committed while the offender is under the influence of drugs. Section 13–604.04(A) thus requires that, to effectuate the mandatory prison time under § 41–1604.15, the State must allege before trial that the crime charged in the case is a violent one. The allegation required under § 13–604.04(A) is "that the defendant **committed** a violent crime. . . ." (Emphasis added). Such an allegation is appropriate, as in a case under § 41–1604.15,[6] where the trial on the allegedly violent offense has not yet taken place and therefore it could not be alleged that defendant was **convicted** of a violent crime. But an allegation under § 13–604.04(A) "that the defendant **committed** a violent crime" does not and cannot invoke § 13–901.01(B), which provides that a person "**convicted**" of a violent crime is not protected by the mandate of probation of § 13–901.01(A). In a given case, a prosecutor could prove beyond any question that a defendant previously committed a violent crime, but such proof would clearly fail to invoke 13–901.01(B) unless the State's proof also established a prior conviction.[7]

¶ 28 The panel in *Benak* argued that a textual revision accomplished by Senate Bill 1279 in 1999 indicated a legislative intention to apply the allegation requirement of § 13–604.04(A) to cases where a *drug offender* had a prior violent crime. The panel asserted:

[T]he reference in section 13–901.01(B) to the definition of violent crime was changed from section "41–1604.15, subsection B" to section 13–604.04, with no specification of a particular subsection. 1999 Ariz. Sess. Laws, ch. 261, § 12. [Section 41–1604.15(B) was renumbered as section 13–604.04(B) ]. It thus appears that the reference in section 13–901.01 to 13–604.04 was intended to incorporate all of section 13–604.04, including the notice requirement.

199 Ariz. at 336, ¶ 11, 18 P.3d at 130.

¶ 29 The specific reference, however, in § 13–901.01(B) to a definition appearing in a particular subsection of former § 41–1604.15 made some sense, since the latter statute had reference to more than one definition, and indeed referred the reader, for example, to Title 13, which again referred to Title 36, for an explanation of what was meant by the term "controlled substance." In any event, the deletion of the superfluous reference to "subsection B" for a definition is readily explained by the obvious circumstance that § 13–604.04 has only one definition in it and

the new § 13–604.04 would apply in Title 13, it missed its own sign. The apparent sense in placing the requirement of § 13–604.04 that the violent nature of a charged offense be alleged before trial in Title 13 arises from its close relationship to the requirement under § 13–604(P) that the dangerous nature of charged crimes be similarly alleged.

**6.** The majority contends that the allegation requirement of § 13–604.04 does not apply to § 41–1604.15 because "the latter statute also requires that the person commit the offense while under the influence of specified drugs." The majority has confused what is necessary with what is sufficient. An allegation under § 13–604.04 is necessary, but not sufficient, to invoke the mandatory prison term called for by § 41–1604.15. That it is not sufficient to invoke mandatory prison does not make it inapplicable to the determination whether prison is mandated. Section 13–604.04 merely requires that a charged offense be denoted as "violent" if the

state seeks mandatory prison, just as § 13–604(P) requires a similar designation of offenses deemed "dangerous." Parenthetically, a crime designated as "violent" for purposes of § 41–1604.15 need not be intrinsically so; theft, or burglary, or DUI, could be "violent" crimes if a deadly weapon or dangerous instrument were involved, or injury resulted. Thus, the allegation requirement of § 13–604.04 would serve a notice function as to such charged crimes which would be somewhat superfluous if applied to a prior conviction, the "violent" nature of which would be determined by the nature of the prior offense and apparent from the documentation of the conviction.

**7.** The majority says that the legislature really meant "convicted," not just "committed." But the legislature has shown that it is quite capable of using these distinct words in distinct ways. *See* § 13–604(P) (providing for allegation of prior "conviction" or that new crime was "committed" while defendant was released on bond).

that palpably is in subsection B. It strains logic, on the other hand, to contort a reference to "a violent crime as defined in § 13–604.04" to make it impose a procedural requirement appearing in a separate subsection. *See* A.R.S. § 13–901.01(B) (emphasis added). And it is obvious that § 13–901.01(B) was amended in 1999 because through an apparent oversight the statute had referred to a definition purportedly to be found in § 41–1604.15 but which was not there.

¶ 30 I agree with the *Benak* panel that *Bolton* is not entirely dispositive of the issue before us here, because it presented a different argument,[8] but I thoroughly disagree with that panel's treatment of *Bolton* in every other respect. This court in *Bolton* wholly heeded the authoritative directive of the people of this state that minor drug offenders, but not seriously recidivist criminals, should be treated and not imprisoned. The people did not direct lenient treatment of minor drug offenders and then leave to state prosecutors and defense lawyers dispositive power to include serious recidivists in that protection. As we said in *Bolton:*

> [S]ection 13–901.01 does not require that the State allege prior convictions before they are deemed to exist. Therefore, we hold that whether a defendant is entitled to be sentenced pursuant to section 13–901.01 is a matter of law to be decided by the court; it is not a matter of pleading or plea bargaining to be decided by the State.

**8.** In *Bolton* the defendant attempted to apply the general allegation requirement of § 13–604(P) to repetitive drug priors under § 13–901.01(F)[which is now (G) ]. *Id.* at 202–03, 945 P.2d at 1333–34. Here, the defendant is seeking to apply a different, special allegation requirement, enacted in a bill that addressed the commission of a violent crime while under the influence of drugs, to his own situation, which is that of a drug offender with a violent past.

**9.** *Benak* is also wrong for reasons not germane to the instant appeal. The state did timely allege a violent prior, a class three felony aggravated assault, in *Benak.* 199 Ariz. at 334, ¶ 3, 18 P.3d at 128. After announcing that "dangerous" and "violent" are separate concepts, the panel muddled them, asserting that an "allegation of *non* dangerous prior felonies certainly does not provide notice that the State intended to allege a violent crime." *Id.* at 335, ¶ 7, 18 P.3d at 129.

*Id.* at 203, 945 P.2d at 1334. This holding is authoritative on the question whether § 13–901.01(B) must be obeyed. *Bolton* is not explainable on any other basis, such as that "it involves a trial court's authority to reject a profferd [*sic* ] plea agreement." The trial judge could not have rejected Bolton's plea unless he were correct on the law in his conclusion that probation was not mandated notwithstanding that the priors were not alleged. *Bolton* emphatically does not rely on the inherent discretion of a trial judge as to a plea bargain, but stands on the trial court's correct determination that the defendant had priors whether the state did or did not allege them.[9]

¶ 31 The *Benak* panel found further support for its position in the fact that § 13–604(P) requires a pretrial allegation of priors, missing the point that the legislature prescribed the enhanced punishments of § 13–604 and was thoroughly competent to provide prosecutorial responsibility and discretion with regard to alleging the circumstances that would require such punishments, while here the people have made an extraordinary directive regarding crime and punishment and made no allowance for it to be disregarded. Further, § 13–901.01(B) does not enhance a felon's punishment as does § 13–604. Section 13–901.01(B) makes a felon punishable as any other felon not subject to the extraordinary directive of § 13–901.01(A) that certain felons shall not go to prison.

This statement in general may be true or it may be false, but as applied to Benak it was clearly wrong. Benak's prior as alleged was a violent offense. The panel apparently misread the definition of violent crime, writing, "[a] 'violent crime,' **in addition to** being 'any criminal act that results in death or physical injury,' is one that involves 'any criminal use of a deadly weapon or dangerous instrument.' " *Id.* (citing A.R.S. § 13–604.04(B)). Actually, the definition set forth is merely inclusive, and the elements are in the alternative; either resultant death or injury, or the use of a deadly weapon or dangerous instrument, suffices to make a crime "violent." A.R.S. § 13–604.04(B). Class three felony aggravated assault necessarily involves either injury or a deadly weapon or dangerous instrument. A.R.S. §§ 13–1204(A)(1), 13–1204(A)(2), 13–1204(B) and (C). Surely the allegation of a violent prior felony does provide notice that the State intended to allege a violent crime.

¶ 32 In this case, Hensley was a violent felon, and he was not entitled to mandatory probation under § 13–901.01. The trial court erred in simply terminating Hensley's probation after he repeatedly violated it, and another panel of this court, in *State v. Benak,* erred in giving lawyers the ability to avoid a clear public directive and allowing them to shield violent drug offenders from the ordinary punitive provisions of our criminal code.

¶ 33 Because I conclude that the majority errs here in following *Benak,* I dissent.