IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| ) | 2 CA-JV 2003-0045 | |
| ) | DEPARTMENT B | |
| ) | | |
IN RE THEMIKA M. | ) | O P I N I O N |
| ) | | |
| ) | | |
| ) | | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 10433803

Honorable Stephen M. Rubin, Judge Pro Tempore

AFFIRMED

---

Barbara LaWall, Pima County Attorney
  By Kara Crosby
                                                                    Tucson
                                                       Attorneys for State

Susan A. Kettlewell, Pima County Public Defender
  By Mary Edith Cunningham
                                                                    Tucson
                                                      Attorneys for Minor

---

E S P I N O S A, Chief Judge.

¶1         Themika M., born May 27, 1986, appeals from the juvenile court's order terminating her probation as unsuccessful and designating an earlier, open-ended offense a class six felony. See A.R.S. § 13-702(G). Themika argues that, under Rule 32(E)(5), Ariz. R. P. Juv. Ct., 17B A.R.S., the juvenile court's authority was limited to revoking, modifying, or continuing her probation and that the court lacked jurisdiction to terminate her probation or label the termination unsuccessful as it did.

¶2 In the fourteen months between February 2002 and April 2003, Themika was the subject of four delinquency petitions, two delinquency adjudications, and two petitions to revoke probation. She was placed on probation first in July 2002 for a twelve-month term after admitting four of six counts alleged in the first three delinquency petitions. The most serious of the charges was unlawful use of a means of transportation, amended from a class five felony to the open, class six charge Themika admitted.

¶3 Four months after first being placed on probation, she committed a misdemeanor domestic violence assault on her mother in November 2002, which the fourth delinquency petition alleged. A contemporaneous petition to revoke probation alleged the assault and various other petty violations of probation conditions committed between August and October 2002. The court adjudicated Themika delinquent for the second time, found her in violation of probation based on her admissions, and in December 2002 ordered her continued on probation until October 2003.

¶4 Between January and March 2003, Themika continued to violate assorted conditions of her probation, and a second petition to revoke probation was filed in April. After she admitted three of the five counts alleged in the petition to revoke, the juvenile court found her in violation for the second time. At disposition, a month before her seventeenth birthday, the court declined to place Themika on juvenile intensive probation supervision (JIPS) and terminated her probation as unsuccessful.

¶5 A juvenile court has broad discretion in determining the proper disposition of a delinquent juvenile, In re Maricopa County Juvenile Action No. JV-510312, 183 Ariz. 116, 901 P.2d 464 (App. 1995), and we will not disturb a disposition order absent an abuse of the court's discretion. In re Maricopa County Juvenile Action No. JV-512016, 186 Ariz. 414, 923 P.2d 880

2

(App. 1996). The court's power to order any specific disposition is circumscribed, however, "in that it must be expressly granted by legislative act." In re Maricopa County Juvenile Action No. J-74275, 117 Ariz. 317, 318, 572 P.2d 451, 452 (App. 1977). Thus, "the initial disposition must be undertaken strictly within the authority specified in one of the subsections of [A.R.S.] § 8-[341(A)]." Id. at 319, 572 P.2d at 453.

¶6        Placing Themika on probation at her initial disposition hearing in July 2002 was expressly authorized by § 8-341(A)(1)(b). Continuing her on probation in December 2002 after she admitted three of the five allegations in the first petition to revoke probation was also expressly authorized by Rule 32(E)(5). And, we conclude, the juvenile court's decision to terminate Themika unsuccessfully from probation was likewise within the court's authority pursuant to Rule 31(D), Ariz. R. P. Juv. Ct., and Rule 32(E)(5).

¶7        Rule 31(D) provides as follows:

> Termination of Probation. The court may terminate the probation of the juvenile at any time prior to the eighteenth (18) birthday of the juvenile upon the request of the juvenile probation officer, motion of the juvenile, or its own motion after notice and opportunity for response from all parties.[1]

---

[1]Rule 27.3, Ariz. R. Crim. P., 17 A.R.S., the comparable rule of criminal procedure applicable to adults, provides:

> Early termination of probation
>
> At any time during the term of probation, upon motion of the probation officer or on its own initiative, the sentencing court, after notifying the prosecutor, may terminate probation and discharge the probationer absolutely.

The statutory underpinning of Rule 27.3 is A.R.S. § 13-901(E), which states:

3

¶8        Themika does not expressly argue that a termination of probation as unsuccessful differs in any critical way from a revocation of probation, which the juvenile court unquestionably has the power to order. See Ariz. R. P. Juv. Ct. 32(E)(5). To some extent, then, the issue presented is one of semantics, at least on these facts. Had the court instead stated it was revoking Themika's probation and discharging her from supervision because she had failed to comply with its terms, its power to do so might have gone unquestioned.

¶9        By using the word "terminated" rather than "revoked," however, the juvenile court implicitly invoked Rule 31(D), which, by its terms, permits the court to terminate probation at any time. Although the rule presumptively also encompasses early, successful terminations of probation, nothing in its language, nor in § 8-341(A), restricts probation terminations only to successful outcomes. Neither the rule nor the statute bars the court from terminating the probation of a persistently noncompliant juvenile, provided the procedural requirements of Rule 31(D) are first met, as they were in this case.

¶10       Our conclusion finds further, albeit tangential, support in Rule 31(C), Ariz. R. P. Juv. Ct., which empowers the juvenile court to "modify any [probation] condition which it has imposed . . . after notice has been provided to the prosecutor and the juvenile." The court's general power to impose, modify, or revoke probation, we find, inherently includes the power to

---

The court, on its own initiative or upon application of the probationer, after notice and an opportunity to be heard for the prosecuting attorney, and on request, the victim, may terminate the period of probation or intensive probation and discharge the defendant at a time earlier than that originally imposed if in the court's opinion the ends of justice will be served and if the conduct of the defendant on probation warrants it.

"terminate" that probation. Cf. In re John G., 191 Ariz. 205, 953 P.2d 1258 (App. 1998) (lack of express authority allowing juvenile court to require fingerprinting as condition of probation did not preclude court's doing so); In re Pima County Juvenile Action No. J-20705-3, 133 Ariz. 296, 650 P.2d 1278 (App. 1982) (juvenile court has inherent power to impose conditions of probation, even though no statute grants specific authority).

¶11　　　In support of her argument to the contrary, Themika cites State v. Hensley, 201 Ariz. 74, 31 P.3d 848 (App. 2001). The defendant in Hensley was not a delinquent juvenile but an adult who had violated the terms of his probation, imposed pursuant to A.R.S. § 13-901.01 (Arizona's "Proposition 200") for his possession of drugs and drug paraphernalia. On appeal, Division One of this court found the trial court had erred by terminating Hensley's probation as unsuccessful, "rather than continuing it and imposing additional terms, as required by A.R.S. § 13-901.01(E)." Hensley, 201 Ariz. 74, ¶2, 31 P.3d 848, ¶2. Section 13-901.01(E) states:

> A person who has been placed on probation pursuant to this section and who is determined by the court to be in violation of probation shall have new conditions of probation established by the court. The court shall select the additional conditions it deems necessary, including intensified drug treatment, community service, intensive probation, home arrest or any other sanctions . . . .

¶12　　　Although the Hensley court observed in dicta that "[n]o statute authorizes the court to terminate probation as unsuccessful," 201 Ariz. 74, ¶21, 31 P.3d 848, ¶21, the actual basis for its decision was the mandatory language of § 13-901.01(E) "requir[ing] the trial court to impose additional terms of probation on Hensley, not terminate his probation as 'unsuccessful.' Because the [trial] court did not follow the mandate of A.R.S. § 13-901.01(E)," the appellate court held, "the disposition was unlawful." Hensley, 201 Ariz. 74, ¶22, 31 P.3d 848, ¶22. Here, in

5

contrast, no comparable statute mandated the imposition of additional conditions of probation, nor does any statute expressly prevent the court from terminating a minor's probation outright pursuant to Rule 31(D), as § 13-901.01(E) did in Hensley.

¶13 Crucial to our decision is the fundamental difference between adult criminal proceedings and juvenile delinquency proceedings. See generally In re Maricopa County Juvenile Action No. JV-508488, 185 Ariz. 295, 299, 915 P.2d 1250, 1254 (App. 1996) (rules of criminal procedure "inapplicable to juvenile proceedings, which are not strictly criminal in nature"). We find persuasive the state's argument that, for those defiant juveniles who have repeatedly violated their probation conditions yet still do not meet the guidelines for commitment to the Arizona Department of Juvenile Corrections, the state should not be forced to waste finite resources in an ongoing but futile attempt to secure compliance until a minor turns eighteen. By either revoking or terminating a delinquent minor's probation for persistent noncompliance, the juvenile court imposes a direct, logical consequence for the minor's violations, avoids "reward[ing] a violator by releasing him [or her] from probation" outright, Hensley, 201 Ariz. 74, ¶23, 31 P.3d 848, ¶23, and conserves limited judicial resources for more compliant, cooperative juveniles whose chances of successfully completing probation are greater.

¶14 In her opening brief, Themika acknowledges that Rule 31(D) permits the juvenile court to terminate a minor's probation at any time before the minor's eighteenth birthday, but she challenges the court's characterization of the termination in this case as unsuccessful. She complains the designation subjects her to detrimental future consequences because she will be unable to have her juvenile adjudications set aside pursuant to A.R.S. § 8-348 or her juvenile records destroyed pursuant to A.R.S. § 8-349, both of which remedies are available only to

6

persons who have "successfully completed all of the terms and conditions of probation." § 8-348(C)(3); § 8-349(B)(4), (D)(4), (E)(4), and (E)(6).

¶15    Regardless of whether the juvenile court terminated Themika's probation as unsuccessful or simply terminated her probation, the underlying reality is that Themika neither complied with nor successfully completed the terms and conditions of her standard probation. The consequences for that noncompliance have been legislatively determined and will follow independently of the juvenile court's characterizing the termination as unsuccessful at the time of disposition. Unless the legislature amends §§ 8-348 and 8-349 to provide otherwise, Themika will indeed suffer detrimental future consequences. But she will incur those consequences as the result of her failure to abide by the conditions of her probation, not as the result of the juvenile court's essentially stating the obvious by accurately describing her performance on probation as unsuccessful.

¶16    Affirmed.

_____
PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
JOHN PELANDER, Presiding Judge


_____
PETER J. ECKERSTROM, Judge

7