912 P.2d 35

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellant, Cross Appellee,**

v.

**J. Kenneth MANGUM and Cherie B. Mangum, husband and wife, Defendants–Appellees, Cross Appellants.**

No. 1 CA–CV 94–0090.

Court of Appeals of Arizona, Division 1.

Feb. 13, 1996.

Roderick G. McDougall, Phoenix City Attorney by Kent T. Reinhold, Assistant Chief Counsel, Phoenix, for Appellant–Cross Appellee.

Dushoff & McCall by Jay Dushoff, Denise J. Henslee, Phoenix, for Appellees–Cross Appellants.

## OPINION

GRANT, Presiding Judge.

This is an appeal by the City of Phoenix from a condemnation award granted to J. Kenneth Mangum and Cherie B. Mangum after their property had been taken by the city for construction of access to a freeway. This court has jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101.

## FACTS AND PROCEDURAL HISTORY

In 1982 and 1983, the city proposed construction of the Squaw Peak Parkway. The original design called for a wide avenue with traffic lights and intersections. The Mangums' house was adjacent to the route of the proposed parkway. The city held a number of public meetings for the purposes of informing citizens about the project and allowing citizen comment on the proposed construction.

While the proposal was still in the planning stages, the Mangums were considering remodeling their home. Not wishing to remodel their home if it would be immediately taken by the city, the Mangums questioned the city design and traffic engineers at these meetings whether their home would be needed for the project. The city employees repeatedly told them that their house would not be taken. In 1984 the Mangums made improvements to their home costing $9,689.

In 1986, the city decided to redesign the parkway into a limited access road with over-

and underpasses. More meetings were held and the Mangums were once again told their home would not be needed for the construction of the parkway. In 1987 the plan was changed again. The Mangums were again assured that their home would not be needed. In 1988, Mr. Mangum repeatedly went to the construction sites to request further information because the homes next to his had been taken by the city. He was again assured his home would not be needed for the project.

In the spring of 1988, the Mangums installed a swimming pool. They contacted the city engineer in charge of the parkway construction because a hold had been placed on building permits in their area. The Mangums were assured their land would not be taken and the building permit was issued. That fall the Mangums made further improvements to their property. The total cost of the 1988 improvements was $25,921.

In November 1988, the Mangums were informed that the city was considering taking their property and in January 1990, the city announced its intention to do so. On December 9, 1991, they moved out. The Mangums were paid the market value for their home including only 25% of the total value of the 1984 and 1988 improvements.

The trial court granted a directed verdict to the city as to the 1984 improvements, but submitted the issue of the 1988 improvements to the jury. The jury awarded the Mangums $19,440.75 in damages for the uncompensated 1988 improvement expenses. The trial court ruled that interest on the damages would accrue from December 9, 1991.

### ISSUES PRESENTED

I. Are the Mangums entitled to receive compensation beyond fair market value?

II. Was the directed verdict as to the 1984 repairs correctly granted?

III. Is December 9, 1991, the correct date from which interest should accrue?

### DISCUSSION

### I. The Measure of Compensation in Eminent Domain

The city argues the Mangums were compensated in full when they received fair market value for their property. They contend that any amount over that value is unwarranted and that the trial court erred in submitting the question of reimbursement for uncompensated improvements to the jury. The Mangums argue that compensation in an eminent domain action is a matter in equity and that any fixed rule is for the purposes of guidance only; the court must be free to determine what amount of compensation is just.

The facts in this case are not in dispute. Whether the Mangums are entitled to that portion of their 1988 home improvement expenses which were not reflected in the market value analysis of their property is a question of law which this court reviews *de novo*. *Miller v. Westcor Ltd. Partnership*, 171 Ariz. 387, 831 P.2d 386 (App.1991); *Hampton v. Glendale Union High School Dist.*, 172 Ariz. 431, 837 P.2d 1166 (App. 1992).

There were two questions submitted to the jury in this action: (1) What was the fair market value of the Mangums' property; and (2) did the city act unreasonably, thus causing further damages to the Mangums? The jury found that the fair market value of the Mangums' home was $125,000. It also found that the city had acted unreasonably and awarded additional damages which are the basis of this appeal by the city.

The city argues that fair market value is the only compensation which the Mangums were entitled to receive for their property. We disagree. The Arizona Constitution, Article 2, Section 17, prohibits the taking of private property without just compensation to the owner. The United States Supreme Court, in interpreting the United States Constitution, has held that just compensation requires the payment of the full monetary equivalent of the damages caused by the governmental taking. *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943). While fair market value may be

the best measure of damages in most cases, it does not supplant the requirement of just compensation.

While legal findings are reviewed *de novo*, factual findings are given great deference. In fact, this court has held that:

> [A]n appellate court will not substitute its judgment for that of the jury in matters of damages to be awarded for condemnation of property for a public use and will not disturb the jury's verdict if supported by any competent evidence.
>
> *State v. Lopez*, 8 Ariz.App. 61, 63, 442 P.2d 884, 886 (1968).

Whether the city acted unreasonably in taking the Mangums' property after repeated assurances that it would not need the property was submitted to the jury. The jury was instructed that if it found the city had acted unreasonably, it was to quantify the damage done to the Mangums by such unreasonable action. The jury determined that the city had acted unreasonably and found the damages to be that portion of the 1988 improvements which were not reflected in the fair market value of the Mangums' home.

The jury had ample evidence on which to support this determination. Over a period of years the city assured the Mangums that their property would not be taken, yet a hold was placed on building permits for the Mangums' property. When the Mangums inquired about this hold and their desire to build a swimming pool and make other improvements in 1988, the permits were granted based upon assurances that the city would not use the land. At this late date, the city chides the Mangums for making improvements which were not reflected in full in the fair market value of their home.

We hold that the jury had substantial evidence to find that the city acted unreasonably in allowing the Mangums to make the improvements after repeated assurances that their property would not be taken and then taking the property a short time later.

## II. The Directed Verdict on the 1984 Improvements

The Mangums cross-appeal and contest the trial court's granting of a directed verdict against them as to the costs of the 1984 improvements to their property. The Mangums contend that the same arguments which allow for compensation as to the 1988 improvements should apply to the 1984 improvements. We disagree.

When reviewing a directed verdict, we view the facts in the light most favorable to the party against whom the verdict was granted. *Dietz v. Waller*, 141 Ariz. 107, 685 P.2d 744 (1984). A directed verdict is only appropriate when the trial court finds that no reasonable finder of fact could draw an opposing verdict from the evidence. *Rourk v. State*, 170 Ariz. 6, 821 P.2d 273 (App.1991).

The trial court granted the directed verdict against the Mangums, finding "there really isn't sufficient evidence to submit the issue to the jury concerning the 1984 improvements." The trial court was referring to the evidence of unreasonableness which it found was sufficient to submit the 1988 improvements to the jury. Examining the facts of the case before the trial court, we hold it was correct in so finding.

The uncontroverted facts were that the city was unaware in 1984 that the proposed parkway would become a freeway-style road requiring separate access. The design itself was still speculative at that point and was in the process of being submitted to the voters for determination. While the proximity in time works against the city as to the 1988 improvements, with respect to the 1984 improvements it works in the city's favor. It was six years after the 1984 improvements that the city decided to take the property and eight years after the improvements that the Mangums actually surrendered possession. The only evidence presented by the Mangums was that they had requested information from the city and were informed that the plans for the parkway did not include their home. That was a true statement at the time and the uncontested evidence was that it wasn't until 1986 that the plans for the parkway were changed to a freeway-style highway. The Mangums failed to present

any evidence that would allow a reasonable finder of fact to find that the city acted unreasonably towards them in 1984.

### III. The Date from which Interest should Accrue

■ The Mangums also cross-appeal the date at which the trial court determined interest should accrue on the unpaid portion of the compensation they received. This issue is directly addressed by statute. A.R.S. section 12–1123(B) states:

> If there is an order for immediate possession prior to the final judgment, the compensation and damages awarded shall draw interest from the date the order is entered by the court.

The order for immediate possession in this case was entered on June 18, 1990, and the trial court awarded interest from December 9, 1991, the date that the *Mangums* actually moved from the property. The city argues that the decision of the trial court was proper, notwithstanding the language of the statute, because the Mangums used a variety of legal means to prevent the city from taking possession.

■ When the meaning of a statute is plain on its face, we will not attempt to look behind or around the plain meaning. *State v. Johnson*, 171 Ariz. 39, 41, 827 P.2d 1134, 1136 (App.1992). The order for immediate possession was entered on June 18, 1990, and this is the date from which the statute requires that the interest begin to accrue.

### CONCLUSION

For the reasons discussed above, we affirm the trial court's decision in this case with the exception of the date from which interest on the unpaid portion of the judgment should accrue. We hold that the interest on the unpaid judgment accrues from June 18, 1990, the date on which the trial court entered the order for immediate possession.

PATTERSON and EHRLICH, JJ., concur.