972 P.2d 652

**U.S. WEST COMMUNICATIONS, INC.,**
**a Colorado corporation, Plaintiff–**
**Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an Agency of the State of Arizona; and Apache, Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai and Yuma Counties, Political Subdivisions of the State of Arizona, Defendants–Appellants.**

**No. 1 CA–TX 97–0012.**

Court of Appeals of Arizona,
Division 1, Department T.

June 23, 1998.

As Corrected June 29, 1998.

Reconsideration Denied Oct. 6, 1998.

Review Denied Feb. 23, 1999.

---

**320**

Fennemore Craig, P.C. by Paul J. Mooney, Attorneys for Plaintiff–Appellee, Phoenix.

Grant Woods, Arizona Attorney General by Frank Boucek, III, Assistant Attorney General, Attorneys for Defendants–Appellants, Phoenix.

RYAN, Judge.

¶ 1 U.S. West Communications, Inc., ("US West") brought a refund action in the tax court against the Arizona Department of Revenue ("ADOR") and Arizona's fifteen counties, challenging the 1996 valuation of a portion of its Arizona property. The tax court rejected ADOR's argument that all of U.S. West's Arizona property was correctly valued under Arizona Revised Statutes Annotated ("A.R.S.") section 42–793(A)(1), and held instead that a portion of the property should have been valued under section 42–793(A)(2). The tax court granted summary judgment for U.S. West, and ADOR and the counties appealed.

¶ 2 We must decide whether section 42–793(A)'s procedure for valuing the property of telecommunications companies permits two different valuation methods: one for local telecommunications companies providing local service and another for telecommunications companies that do not provide local service. If two methods are allowed, we must also decide whether these methods violate Arizona's uniformity clause. ARIZ. CONST. Art. 9, § 1. We hold that the statutory procedure in A.R.S. section 42–793(A) does distinguish between telecommunications companies providing local service and those that do not. We also conclude that, based on

this record, this approach does not violate Arizona's uniformity clause. We therefore reverse with directions to enter judgment for ADOR and the counties.

## FACTS AND PROCEDURAL HISTORY

¶3 The material facts are undisputed. U.S. West was once part of the Bell System before Bell's court-ordered break-up. It is now referred to in the telecommunications industry as a Regional Bell Operating Company and a local exchange carrier. US West provides telecommunications service in Arizona and thirteen other states. This service includes residential and business local telecommunications service and additional services like call waiting, caller I.D., call forwarding, and intraLATA long distance service.

¶4 A "LATA" is a Local Access and Transport Area established as a result of the AT & T divestiture. *Intra* LATA long-distance service originates and terminates within the same LATA and is provided by a local exchange carrier such as U.S. West. Intra-LATA service is sometimes referred to as local long-distance service.

¶5 *Inter* LATA long-distance service is long-distance service between LATAs, and it is provided by a number of competing interexchange carriers, such as AT & T, MCI, and Sprint. InterLATA service includes calls from one state to another and between LA-TAs within Arizona. The Arizona Corporation Commission authorizes interexchange carriers to provide interLATA long-distance service in Arizona, but not local exchange service. Interexchange carriers provide interLATA long-distance service to Arizona customers by purchasing access to U.S. West's lines and other telecommunications equipment and property.

¶6 U.S. West is strictly a local exchange carrier, by far the largest of thirteen such carriers in Arizona. It provides no inter-LATA long-distance service; the only long-distance service it is authorized to provide is intraLATA long-distance service. In Arizona, U.S. West operates more than two million lines from its offices to its customers' premises. These lines constitute approxi-mately 95% of all access lines in use in the state. About 20% of U.S. West's revenue comes from intraLATA long-distance service. Approximately another 26% comes from access fees charged to interexchange carriers, and about 13% comes from other non-basic, non-local telecommunications services. The remaining 41% comes from basic local services and add-ons like call waiting, caller I.D., and call forwarding.

¶7 ADOR annually values the taxable property of telecommunications companies in Arizona. It allocates these valuations among the state's fifteen counties, which then levy and collect property taxes accordingly. In 1996 ADOR valued U.S. West's Arizona class 2 property (real and personal property used to provide local telecommunications service) at $792 million, and its Arizona class 3 (commercial) property at $1.157 billion. US West brought this action for a refund on the theory that ADOR had overvalued its class 3 commercial property by approximately $135 million by applying A.R.S. sections 42–793(A)(1) and –793.01 rather than A.R.S. section 42–793(A)(2).

¶8 On cross-motions for summary judgment the tax court agreed with U.S. West. ADOR and the counties appealed. This court has jurisdiction, A.R.S. section 12–2101(B), and the Chief Judge has assigned the appeal to Department T as required by A.R.S. sections 12–120.04(G) and –170(C).

## ANALYSIS

### I.  Statutory Interpretation

¶9 To decide whether the tax court ruled correctly, we must first interpret two statutes. Section 42–793 provides in part:

A. On or before August 31 of each year the department shall determine the following valuations as of January 1 of the valuation year, as defined in § 42–201:

1. The valuation of all property, franchises and intangible values of telecommunications companies operating in the state and providing local telecommunications service at their full cash value as provided by § 42–793.01.

2. The valuation of the property of other telecommunications companies operating in

this state at its full cash value. Real estate shall be valued at market value and personal property shall be valued on a unitary basis at its historical cost less depreciation.

"Other telecommunications company" is defined as a "telecommunications company that does not provide local telecommunications service in this state." A.R.S. § 42–793(A)(2)(c). Section 42–793.01, to which section 42–793(A)(1) refers, provides:

> In making the valuation required pursuant to § 42–793, the full cash value for all real and personal property used to provide local telecommunications service shall be allocated for purposes of classification of property for taxation from the total full cash value of each telecommunications company's property for each tax year by:
>
> 1. Determining a ratio by dividing total basic local service revenues, excluding cellular mobile service revenues, by total operating revenues for this state, using definitions of those accounts specified by the federal communications commission.
>
> 2. Multiplying the total full cash value of the property in this state by the ratio determined in paragraph 1 of this section.

¶ 10 ADOR interprets these sections as requiring it first to determine the full cash value of all Arizona property of any telecommunications company that provides local telecommunications service in the state. A.R.S. § 42–793(A)(1). Then ADOR must allocate the total full cash value between class 2 and class 3 property according to the proportion that the taxpayer's total basic local service revenues (excluding those from cellular mobile service) bear to its total operating revenues from Arizona. A.R.S. § 42–793.01. For a telecommunications company that does not provide local telecommunications service in this state, ADOR must determine the full cash value of all Arizona property according to the market value of the company's real property and the historical cost less depreciation, under statutorily authorized rules, of each unit of its personal property. A.R.S. § 42–793(A)(2).

¶ 11 U.S. West argues that ADOR misreads A.R.S. sections 42–793 and –793.01. It contends that only property used to provide local telecommunications service (class 2 property) is to be valued according to sections 42–793(A)(1) and –793.01; the remainder (class 3 property) should be valued under section 42–793(A)(2). To support its position, U.S. West asserts that A.R.S. sections 42–793(A)(1) and –793.01 require that ADOR segregate from all the property a telecommunications company owns in Arizona those items that it uses to provide local service. Once this has been done, A.R.S. section 42–793(A)(1) requires that this class 2 property be valued according to A.R.S. section 42–793.01. Section 42–793.01 values class 2 property by applying the ratio between the company's local service revenues and its total Arizona revenues to the full cash value of all of the company's property, thus establishing the value of the class 2 property. Then once section 42–793(A)(1) has been applied to identify class 2 and class 3 property, the remaining property—that used to provide "other" telecommunications service (such as long-distance, cellular, and add-ons)—should be valued under section 42–793(A)(2).

■■ ¶ 12 When interpreting a statute, our main objective is to determine the legislative intent behind the challenged provision. *Devenir Assocs. v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991); *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). The principal indicator of that intent, and the first place the court must look, is the language of the provision. *Tobel v. Arizona Dep't of Pub. Safety*, 189 Ariz. 168, 174, 939 P.2d 801, 807 (App. 1997); *Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App. 1991). When the statutory language is clear and unambiguous, courts need not and should not resort to the secondary rules of statutory construction. *See id.; see also City of Phoenix v. Mangum*, 185 Ariz. 31, 35, 912 P.2d 35, 39 (App.1996).

■■ ¶ 13 The language of A.R.S. sections 42–793(A) and –793.01 is clear and unambiguous. Nothing in either section suggests that ADOR must segregate from a telecommunications company's entire Arizona property the particular items it uses to provide local service. In fact, A.R.S. section 42–

793(A)(1) requires ADOR to value "all property, franchises and intangible values of telecommunications companies ... providing local telecommunications service at their full cash value as provided by § 42–793.01." The plain language of the statute refutes U.S. West's argument.

¶ 14  Additionally, contrary to U.S. West's assertion, neither section 42–793(A)(1) nor section 42–793.01 states or implies that only class 2 property is to be valued under section 42–793.01. As noted above, section 42–793(A)(1) requires ADOR to value *all* Arizona property of telecommunications companies that provide local service. Section 42–793.01 then provides that in doing so, ADOR must apply the ratio between the company's local service revenues and its total Arizona revenues to the total full cash value of all its Arizona property "for purposes of classification of property for taxation." This language makes clear that the local service provider's Arizona property has not yet been broken down into classes 2 and 3 when the ratio is applied under section 42–793.01.

¶ 15  Application of that ratio is the mechanism that achieves this classification process. The result is the dollar value of that portion of the total which represents property the local carrier uses to provide local telecommunications service—class 2 property. Because the statutory ratio is applied to the total full cash value of all of the local carrier's Arizona property, the remainder of that total value equals the full cash value of the company's Arizona property *not* used to provide local service—class 3 (commercial) property.

■ ¶ 16  We conclude that these statutes provide mutually exclusive methods for valuing the property of two different types of telecommunications companies. The method described in A.R.S. section 42–793(A)(1) and –793.01 applies to telecommunications companies that provide local service even if they have revenues from other sources. The second method under A.R.S. section 42–793(A)(2) applies to "other telecommunications companies"—those that do not provide local service. Under these statutes a company cannot provide local telecommunications service and also fit within the definition of an "other telecommunications company." To hold otherwise would render the clear language of A.R.S. section 42–793, and the specific definition of "other telecommunications company" set forth in subsection (A)(2)(c), superfluous and void. This is contrary to the cardinal rule of statutory construction that statutes should be interpreted so that no clause, sentence, or word is rendered superfluous or void. *Continental Bank v. ADOR,* 131 Ariz. 6, 8, 638 P.2d 228, 230 (App.1981).

## II.  The Uniformity Clause

¶ 17  U.S. West contends that ADOR's interpretation of A.R.S. sections 42–793 and –793.01 violates Arizona Constitution Article 9, Section 1. This section provides in relevant part: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." US West points out that under ADOR's view of sections 42–793 and –793.01, class 3 property owned by a telecommunications company that does not provide local service in Arizona would be valued under the favorable rules of A.R.S. section 42–793(A)(2), while class 3 property owned by a local service provider like U.S. West would be set at full cash value without benefit of those rules. US West argues that in its case, this would violate Article 9, Section 1, because long-distance providers and U.S. West are in the same industry and use the same class 3 telecommunications property for the same purposes. Consequently, according to U.S. West, ADOR's interpretation results in a disparate treatment of U.S. West as compared to all other similarly situated companies.

■ ¶ 18  It is fundamental that statutes are presumed constitutional. *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 148, 800 P.2d 1251, 1256 (1990); *Tucson Elec. Power Co. v. Apache County,* 185 Ariz. 5, 11, 912 P.2d 9, 15 (App.1995). The party challenging a statute as unconstitutional bears the burden of demonstrating that it is. *Id.*

■ ¶ 19  The record does not support U.S. West's allegation of non-uniform taxation. First, U.S. West asserts that ADOR conceded in the tax court that its class 3

property is identical to the class 3 property used by other long-distance providers. US West refers to the affidavit of Susan Husij, an ADOR official:

> Plaintiff [US West] does not maintain two (2) separate and distinct types of property for the provision of local services and access to long-distance carriers or [interexchange carriers]. The property utilized for local telecommunications service is similar in physical construction and/or use, and in some cases, is the identical property utilized by long-distance carriers which are provided access to Plaintiff's local telecommunications network.

This evidence establishes only that some property U.S. West uses to provide local telecommunications service, class 2 property, is the same as, or similar to, property interexchange carriers use to provide interLATA long-distance service, class 3 property. Neither the affidavit nor anything else in the record indicates that U.S. West's class 3 property used to provide intraLATA long-distance service falls into the same category.

¶ 20 More importantly, U.S. West overlooks the significance of our supreme court's holding in *In re America West Airlines, Inc.*, 179 Ariz. 528, 880 P.2d 1074 (1994). US West argues that it uses its class 3 telecommunications property—namely, cables, switches, and switching equipment—for the same purpose that other telecommunications companies use their class 3 equipment: to provide long-distance service. As *America West* made clear, however, these general similarities are insufficient to establish a violation of Article 9, Section 1. For taxation purposes, classifications "must be real, not fanciful, and [must be] based on the nature of the property or on some other real difference in its use, utility, or productivity." 179 Ariz. at 535, 880 P.2d at 1081. Relevant questions include the type of industry and the property's physical attributes and purpose. If all factors are the same, then the uniformity clause requires that the property be similarly classified. *Id.* at 533 n. 4, 880 P.2d at 1079 n. 4. Here, the record does not support a conclusion that all factors are the same. Not only is the nature of the industries different, but the class 3 property is put to a different

use. By law U.S. West cannot use its class 3 property for the same purposes as do the interexchange carriers. US West can only use its class 3 property to provide intraLATA long distance service while other telecommunications companies use their class 3 property to provide interLATA long-distance service. Thus, we are not considering "direct competitors using the same [property] to provide identical ... services to the same customer base." *Id.* Instead, we have companies in the same general industry that provide different services. *Cf. ADOR v. Trico Elec. Coop., Inc.*, 151 Ariz. 544, 548, 729 P.2d 898, 902 (1986) (analyzing property tax scheme for various public utilities).

¶ 21 In sum, U.S. West fails to present specific evidence to show unconstitutionality. The record contains mere generalizations about similarities between the purpose and use of U.S. West's intraLATA property and the purpose and use of other long-distance carriers' interLATA property. Further, the record contains next to nothing about those properties' comparative physical attributes and productivity. US West fails to demonstrate that the use of A.R.S. sections 42–793 and –793.01 in this case violated Arizona Constitution Article 9, Section 1.

### CONCLUSION

¶ 22 We reverse with directions to enter judgment for appellants ADOR and the counties.

PATTERSON, P.J., and THOMPSON, J., concur.