75 P.3d 123

**CITIZENS TELECOMMUNICATIONS COMPANY OF THE WHITE MOUNTAINS, an Arizona corporation; Citizens Navajo Communications Company, an Arizona corporation; Arizona Telephone Company, Inc., an Arizona corporation; Southwestern Telephone Company, Inc., an Arizona corporation; Valley Telephone Cooperative, Inc., an Arizona corporation; Copper Valley Telephone, Inc., a Nevada corporation; and U.S. West Communications, Inc., nka Qwest, a Colorado corporation, Plaintiffs–Appellees,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an Agency of the State of Arizona; Apache, Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai, and Yuma Counties, Political Subdivisions of the State of Arizona, Defendants–Appellants.**

Citizens Telecommunications Company of the White Mountains, an Arizona corporation; Citizens Navajo Communications Company, an Arizona corporation; Arizona Telephone Company, Inc., an Arizona corporation; Southwestern Telephone Company, Inc., an Arizona corporation; Valley Telephone Cooperative, Inc., an Arizona corporation; and Copper Valley Telephone, Inc., a Nevada corporation, Plaintiffs–Appellants,

v.

Arizona Department of Revenue, an Agency of the State of Arizona; Apache, Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai, and Yuma Counties, Political Subdivisions of the State of Arizona, Defendants–Appellees.

No. 1 CA–TX 02–0017.

Court of Appeals of Arizona, Division 1, Department T.

Aug. 26, 2003.

Fennemore Craig, P.C. by Paul J. Mooney, Kendis K. Muscheid, Paul Moore, Phoenix, Attorneys for Plaintiffs–Appellees, Plaintiffs–Appellants.

Sanders & Parks, P.C. by Robert J. Bruno, Jay C. Jacobson and Terry Goddard, Attorney General by Frank Boucek, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellants, Defendants–Appellees.

## OPINION

WEISBERG, Judge.

¶1 The Arizona Department of Revenue ("ADOR" or the "Department") and fifteen Arizona counties (the "Counties") appeal from the tax court's judgment that ADOR violated the Uniformity Clause and the Equal Protection Clause of the Arizona Constitution in applying Arizona Revised Statutes ("A.R.S.") sections 42–793 and 42–793.01 (1997) to Qwest Corporation ("Qwest") during the 1997, 1998, and 1999 tax years. Meanwhile, six incumbent local exchange carriers (collectively or individually the "ILECs" or "Taxpayers")[1] appeal the tax court's determination that insufficient evidence exists to support their constitutional claims. We affirm the tax court's judgment in part, reverse it in part, and remand for proceedings consistent with this opinion.

## BACKGROUND

¶2 Qwest, formerly known as U.S. West Communications, Inc., was part of AT & T's

---

1. The ILECs are: Citizens Telecommunications Company of the White Mountains ("Citizens White Mountains"), Citizens Navajo Communications Company ("Citizens Navajo"), Arizona Telephone Company, Inc. ("Arizona Telephone"), Southwestern Telephone Company, Inc. ("Southwestern Telephone"), Copper Valley Telephone, Inc. ("Copper Valley") and Valley Telephone Cooperative, Inc. ("Valley Telephone").

Bell system before AT & T was ordered to divest its local telephone business. Qwest now functions as a Regional Bell Operating Company and a local exchange carrier, providing telecommunications services in Arizona and other states.

¶ 3 The break-up resulted in the creation of Local Access and Transport Areas ("LA-TAs"). Qwest provides intraLATA long-distance service, which means service originating and terminating within the same LATA. InterLATA service consists of long-distance service between LATAs in Arizona and from one state to another. AT & T, MCI, and Sprint provide interLATA service as well as intraLATA long-distance service to Arizona customers by purchasing access to Qwest's lines and other telecommunications equipment and property. Qwest provides no interLATA service.

¶ 4 ADOR annually values the taxable property of telecommunications companies in Arizona. It allocates these valuations among the states' fifteen counties, which then levy and collect property taxes. ADOR assesses the valuations for these companies based upon their class 2 Arizona property (real and personal property) and their class 3 Arizona property (commercial property) as required by A.R.S. §§ 42–793 and –793.01.

¶ 5 Beginning in 1994, Citizens Utilities Company brought four successful lawsuits challenging ADOR's interpretation of the relevant statutes. Qwest obtained a summary judgment in tax court on the same grounds. At that time, Qwest did not move for summary judgment on its discrimination claim.[2]

¶ 6 On appeal, this court reversed the summary judgment in favor of Qwest and denied the alternative discrimination claim because it had "fail[ed] to present specific evidence to show unconstitutionality. The record contains mere generalizations about similarities between the purpose and use of U.S. West's intraLATA property and the purpose and use of other long-distance carriers' inter-

LATA property." *U.S. West Communications, Inc. v. Ariz. Dep't of Revenue,* 193 Ariz. 319, 324, ¶ 21, 972 P.2d 652, 657 (App. 1998).

¶ 7 During the pendency of that appeal, Qwest and the ILECs filed complaints or answers to ADOR's complaints challenging the methods used to value their class 3 telecommunications property for tax years 1997, 1998, and/or 1999.[3] Following consolidation of the claims, the parties filed cross-motions for summary judgment. ADOR also filed a Motion to Enforce Settlement and Stipulations Concerning Valuations. The tax court denied all the motions, and we declined to accept jurisdiction of ADOR's special action petition asking for enforcement of the settlement.

¶ 8 Following discovery, the parties launched another round of summary judgment motions. In their motions, Qwest and the ILECs argued that A.R.S. §§ 42–793 and 42–793.01 were unconstitutional as applied to them because their class 3 properties were taxed using a different and prejudicial valuation method when compared to other similarly-situated taxpayers owning class 3 telecommunications property. As to Qwest, ADOR and the Counties responded that the rationale of the *U.S. West* decision defeated Qwest's motion. As to the ILECs, ADOR and the Counties responded that §§ 42–793 and 42–793.01 were constitutional as applied to the ILECs because major differences existed between the ILECs and the other taxpayers: (1) the major services they provided were different, (2) most of the property and equipment they owned were different, and (3) they were regulated differently.

¶ 9 With respect to Qwest, the tax court found that "A.R.S. §§ 42–793 and 42–793.01 providing for the disparate tax treatment of Class 3 property is discriminatory as applied to [Qwest] for the tax years 1997, 1998, and 1999." The court reasoned that Qwest was a "direct competitor[ ] with other telecommuni-

---

**2.** Qwest's discrimination claim alleged that ADOR's method for taxing Qwest's property violates the Uniformity Clause of the Arizona Constitution. Qwest did not move for summary judgment on this claim because the statutory interpretation issue was dispositive in its favor.

**3.** Citizens White Mountains and Citizens Navajo have appealed for 1999 only.

cations companies, as defined by statute, that [Qwest was] using the same equipment type(s) or more notably equipment that was functionally equivalent in light of the rapidly changing technology at the time, and that [Qwest was] providing identical services to the same customer base in the same geographic region in Arizona." In its final judgment, the tax court rendered Qwest's valuation for the tax years 1997 and 1998 moot, determined that the full cash values of Qwest's class 3 property were in accordance with the parties' prior stipulation and ADOR's appraisal, ordered a refund for the amount of taxes paid in excess of the recalculated amount of taxes due, and awarded Qwest its taxable costs and attorney fees. With respect to the ILECs, the tax court held that "there is insufficient evidence presented by [the ILECs] to support their contention that A.R.S. §§ 42–793 and 42–793.01 were discriminatory as applied to them during the 1997, 1998, and 1999 tax years."

¶ 10 ADOR and the Counties appealed from the judgment in favor of Qwest. The ILECs appealed from the portion of the ruling unfavorable to them.

## DISCUSSION

### I. The Tax Court Had Jurisdiction to Hear Taxpayers' Discrimination Claims.

#### A. Taxpayers Have Paid All Levied Taxes.

¶ 11 As a preliminary matter, ADOR and the Counties assert that Copper Valley, Valley Telephone, and Qwest lack standing to assert their counterclaims because, although they timely paid the first installment of taxes actually levied, they did not pay the allegedly illegal taxes that they seek to avoid in their discrimination counterclaims. ADOR and the Counties further point out that it is now too late for these Taxpayers to re-file their claims.

¶ 12 Arizona law requires that a taxpayer pay the tax owed prior to bringing an illegal collection claim. A.R.S. § 42–11005(A) (1999). The purpose of this requirement is to assure the government's continued fiscal soundness. See Pima County v. Cyprus–Pima Mining Co., 119 Ariz. 111, 114, 579 P.2d 1081, 1084 (1978).

¶ 13 Here, however, ADOR has not yet assessed and the Counties have not yet levied[4] those taxes that are premised upon the disputed discrimination claims. Accordingly, Taxpayers paid all levied taxes for the years in issue by the time they filed their claims, but not those taxes not yet assessed or levied. Arizona law does not require that a taxpayer pay taxes that have yet to be assessed or levied prior to bringing an illegal collection claim. See A.R.S. § 42–11005(A). Moreover, a contrary approach would vitiate judicial economy by forcing taxpayers to litigate payment claims, and then refile and litigate discrimination claims arising out of the same transaction. See id. We therefore reject the argument that Taxpayers' claims are time-barred.

### B. The Failure to Join One County Does Not Defeat Jurisdiction as to the Counties Before the Court.

¶ 14 ADOR and the Counties alternatively argue that four of the consolidated cases (or portions thereof) must be dismissed because of the failure to name one or more counties as parties. Three of such cases involve counterclaims by Copper Valley, Valley Telephone and Qwest for the 1997–98 appeals. The fourth is the Citizens White Mountains appeal for the 1999 tax year.

¶ 15 As to the first three such cases, pursuant to A.R.S. § 42–16208(A)(3) (1999), ADOR is required only to name a taxpayer when it files an appeal, but there is no requirement that ADOR name the relevant counties. Because these Taxpayers did not appeal these matters, they had no duty to

---

4. ADOR and the Counties invoke Shew v. Jeffers, but their reliance upon that case is misplaced. 147 Ariz. 192, 709 P.2d 549 (App.1985). Shew concerned a property tax refund action under former A.R.S. § 42–204(C) seeking illegally collected taxes. Id. at 193–94, 709 P.2d at 550–51.

In this case, unlike Shew, the counterclaims are in the nature of declaratory relief because the Taxpayers paid the lower amounts set by the State Board, and ADOR and the Counties seek to increase those amounts through their appeal.

name specific counties, and the mere fact that they filed counterclaims in these matters creates no obligation under the statute to do so. *See id.*

¶ 16 As for the appeal taken by Citizens White Mountains, A.R.S. § 42–16208(A)(1) (1999) requires that a taxpayer name the Department and the counties collecting the tax. The Taxpayer accordingly named the Department and Apache, Coconino, Gila, Greenlee, and Navajo Counties because it owned affected property in those locations. Citizens White Mountains claimed it did not own property in Maricopa County at the time of the appeal, but ADOR attested that the Taxpayer owned property there during the relevant time. Accepting ADOR's factual assertion as true, the tax court nevertheless rejected the proposition that the failure to join one county requires the dismissal of the properly named counties. We agree with the tax court's analysis.

¶ 17 In Arizona, ADOR annually values the taxable properties throughout the state, and it falls to the counties to levy and collect the tax. If a taxpayer fails to join one of the affected counties, it will not be able to collect a refund from *that* county. *See Ellman Land Corp. v. Maricopa County*, 180 Ariz. 331, 336, 884 P.2d 217, 222 (App.1994) (holding that a county is a necessary party if it will be required to pay a refund to the taxpayer). But such result does not bar refund claims against properly named counties. *See id.* Also, although the failure to join a county in a discrimination suit may affect a taxpayer's remedy as to that county, it does not deprive the court of power to hear the claim. *See id.* Finally, there is no issue of notice here, as ADOR and the affected Counties have always been parties to this case. Therefore, these claims properly proceeded against the named Counties.

### C. The Tax Court Properly Denied ADOR's Motion to Dismiss Arizona Telephone's Appeal in Its Entirety.

¶ 18 ADOR and the Counties also contend that we must dismiss Arizona Telephone's appeal in its entirety based upon its delinquent tax payment to Pima County in tax year 1999. The tax court dismissed the

appeal as to Pima County because of Arizona Telephone's failure to pay when due its second installment to Pima County; however, the court did not dismiss the appeal as to Coconino, Gila, Yuma, and Maricopa Counties because these four counties had received timely tax payments.

¶ 19 For the reasons previously discussed above, we find no error in the tax court's resolution of this issue. A county is a necessary party only if it will be required to pay a refund to the taxpayer. *See Ellman Land Corp.*, 180 Ariz. at 336, 884 P.2d at 222. Pima County will not be obligated to pay a refund and therefore was properly dismissed; however, jurisdiction still exists for the remaining counties. *See id.*

### II. The Tax Court Correctly Concluded that Only Qwest's Discrimination Claim Had Evidentiary Support.

¶ 20 We next review de novo the tax court's summary judgment, determining whether any material facts are in dispute and whether the court correctly applied the law. *S. Pac. Transp. Co. v. Ariz. Dep't of Revenue*, 202 Ariz. 326, 329–30, ¶ 7, 44 P.3d 1006, 1009–10 (App.2002). We view all facts in the light most favorable to the non-moving party. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

¶ 21 The interpretation and application of statutes present questions of law requiring de novo review. *In re U.S. Currency in Amount of $315,900.00*, 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995) (citation omitted). In addition, constitutional issues, even mixed questions of law and fact, are reviewed de novo. *Id.* (citation omitted).

¶ 22 During the relevant time period, A.R.S. § 42–793 provided:

A. On or before August 31 of each year the department shall determine the following valuations as of January 1 of the valuation year, as defined in § 42–201:

1. The valuation of all property, franchises and intangible values of telecommunications companies operating in the state and providing local telecommuni-

cations service at their full cash value as provided by § 42–793.01.

2. The valuation of the property of other telecommunications companies operating in this state at its full cash value. Real estate shall be valued at market value and personal property shall be valued on a unitary basis at its historical cost less depreciation.

"Other telecommunications company" means "a telecommunications company that does not provide local telecommunications service in this state." A.R.S. § 42–793(A)(2)(c). In addition, A.R.S. § 42–793.01 provided:

In making the valuation required pursuant to § 42–793, the full cash value for all real and personal property used to provide local telecommunications service shall be allocated for purposes of classification of property for taxation from the total full cash value of each telecommunications company's property for each tax year by:

1. Determining a ratio by dividing total basic local service revenues, excluding cellular mobile service revenues, by total operating revenues for this state, using definitions of those accounts specified by the federal communications commission.

2. Multiplying the total full cash value of the property in this state by the ratio determined in paragraph 1 of this section.

### A. Qwest's Discrimination Claim

¶ 23 According to the Uniformity Clause of the Arizona Constitution, Article 9, Section 1, "all taxes shall be uniform upon the same class of property." This provision is more restrictive than the Equal Protection Clause, as it is designed for a different purpose: "to ensure 'that each taxpayer's property bear the just proportion of the property tax burden.'" *In re Am. W. Airlines, Inc.*, 179 Ariz. 528, 531, 880 P.2d 1074, 1077 (1994) (citations omitted). Meanwhile, the less narrowly focused Equal Protection Clause states: "No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immuni-

ties which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const. art. 2, § 13.[5]

¶ 24 Regarding Qwest, to determine whether a classification violates the Uniformity Clause, we must consider whether Qwest and the comparison taxpayers are (1) direct competitors, (2) using the same equipment type(s), (3) providing identical services, (4) to the same customer base. *Am. W.*, 179 Ariz. at 533 n. 4, 880 P.2d at 1079 n. 4. Additional factors include the property's physical attributes, productivity, use, and purpose. *Id.* Although all factors are to be considered, the paramount concern is whether the property of Qwest and the comparison taxpayers are functionally equivalent. *See id.* at 532–33 & n. 4, 880 P.2d at 1078–79 & n. 4.

¶ 25 ADOR and the Counties argue that the *U.S. West* decision precludes the tax court from granting Qwest relief. We, however, disagree because of the nature of Qwest's claim and because of the changes in the telecommunications industry since Qwest brought its last challenge.

¶ 26 In this case, Qwest challenges ADOR's use of the "market value" method under A.R.S. §§ 42–793(A)(1) and –793.01 for valuing Qwest's class 3 property, which includes intraLATA toll calls, vertical services including such features as caller ID and call waiting, and access services between telecommunications networks. This method, which is different from the "historical cost less depreciation" method applied to other telecommunications companies pursuant to A.R.S. § 42–793(A)(2), results in Qwest's higher valuation. We previously rejected this argument in *U.S. West* because (1) no evidence had been submitted of de facto tax discrimination, and (2) Qwest was not a direct competitor in the same industry as other telecommunications companies. However, Qwest now contends, and we agree, that it has produced substantial evidence in this case that it now is a direct competitor in the same industry as other telecommunications companies and that its class 3 telecommuni-

---

5. Because we conclude that the Uniformity Clause has been violated as it applies to Qwest, we do not consider the application of the Equal Protection Clause.

cations property is functionally identical to that of those other telecommunications companies. *See Am. W.*, 179 Ariz. at 532–33 & n. 4, 880 P.2d at 1078–79 & n. 4.

¶ 27 The undisputed facts support Qwest's argument. They establish that Qwest is authorized to provide intraLATA long distance ("toll") service within the LATA boundaries. Of course, since the advent of the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (codified at 47 U.S.C. § 151, et seq.) (the "Act"), all telecommunications assets are subject to competition. According to the Federal Communications Commission, the Act's goal is to allow any communications business to compete in any market. *See id.* Significantly, Qwest has experienced the effects of the competition; the record reflects that it lost 36 percent of the intraLATA long distance market to competitors by December 1996, and that its share fell to 50 percent by December 1997.

¶ 28 Meanwhile, Qwest faces burgeoning competition from mobile wireless carriers; by the end of 2000, there were 1.8 million mobile wireless subscribers in Arizona alone. In late 1995, PCS ("Personal Communications Service") mobile wireless providers began including other features, such as call waiting and call forwarding, in the monthly service price. In addition, the Act enabled Competitive Local Exchange Carriers ("CLECs") to offer a full range of local services, resulting in an increase in competition for these services. As a result, Qwest's market share has dwindled.

¶ 29 ADOR and the Counties respond that Qwest's services are still distinguishable because of such physical considerations as the different types of materials used by Qwest that are not used by its putative competitors. We, however, disagree because, although *America West* considers such factors, the functional equivalency of the properties under review is the paramount concern. *See* 179 Ariz. at 532–33 & n. 4, 880 P.2d at 1078–79 & n. 4.

¶ 30 In *America West*, America West successfully challenged a statute taxing airline commuter planes at different rates based upon whether the taxpayer also owned large aircraft. *Id.* at 529, 880 P.2d at 1075. The Arizona Supreme Court found a violation of the Uniformity Clause, explaining that commuter aircraft must be taxed in the same manner because the property has "similar physical attributes and productiveness, [and is] used the same way and for the same purpose by owners in the same industry." *Id.* at 532–33, 880 P.2d at 1078–79.

¶ 31 Importantly, the court explained that no Uniformity Clause violation exists when Arizona taxes identical property if it is used for different purposes. For example, the Arizona Legislature may place a Ford truck belonging to an airline in one tax class and an identical Ford truck belonging to a railroad company in another tax class and tax them at different rates. *Id.* at 532, 880 P.2d at 1078. This example emphasizes functionality and undercuts the emphasis by ADOR and the Counties on the physical component. In Uniformity Clause cases, form follows function.

¶ 32 In this case, discrimination exists because Qwest's products are functionally similar to those of its relevant competitors. To illustrate, an intraLATA call from Phoenix to Flagstaff operates the same way whether carried by Qwest or AT & T. A Qwest call would entail use of the Qwest Phoenix switch, the Qwest Access Tandem switch (used exclusively for intraLATA traffic), the Qwest Flagstaff switch, and Qwest's connecting transport facilities. Similarly, an AT & T call would involve the Qwest Phoenix switch, the AT & T Access Tandem switch, the Qwest Flagstaff switch, and AT & T's connecting transport facilities. As with the *America West* parties, Qwest and its competitors are using functionally identical property for functionally identical uses. Yet, as in *America West*, Qwest's class 3 property has received unequal treatment because Qwest also owns class 2 property.

¶ 33 We based our decision in *U.S. West* on the fact that Qwest was not a competitor "in the same industry" with other telecommunications companies because "[b]y law [Qwest] cannot use its class 3 property for the same purposes as do the interexchange carriers [i.e., AT & T, MCI and Sprint]. [Qwest] can only use its class 3 property to provide intra-

LATA long distance service while other telecommunications companies use their class 3 property to provide interLATA long-distance service." 193 Ariz. at 324, ¶ 20, 972 P.2d at 657. This fact no longer holds true. There was abundant competition among Qwest and AT & T, MCI, Sprint, and others during 1997–1999 for the intraLATA long distance market, carrier access, wireless providers, vertical services, and other telecommunications services.[6] Accordingly, the *America West* requirements have been met and the Uniformity Clause violation is affirmed as it applies to Qwest.[7]

### B. The ILECs' Discrimination Claims

¶ 34 Although Qwest presented adequate proof of a constitutional violation, the tax court concluded that the remaining Taxpayers did not. Specifically, the tax court found a lack of evidence that the ILECs and the comparison taxpayers provided identical services, were direct competitors, and serviced the same customer base.

¶ 35 Regarding Arizona Telephone, Valley Telephone, Southwestern Telephone, and Copper Valley, the tax court found no competent evidence that they provided intraLATA telephone service. Also, although these Taxpayers provided access service, there was no evidence that such access service was provided by any of the allegedly competitive long distance carriers such as Sprint, MCI, and AT & T. Consequently, although these four Taxpayers competed with each other to obtain access customers, they were not direct competitors of the long-distance carriers. Further, the evidence indicated that their provision of vertical and non-local telecommunication services was minimal at best.

¶ 36 The ILECs nevertheless argue that the tax court misapplied the standard stated in *America West*: "[T]here is no requirement that a taxpayer actually prove that it is a direct competitor of another taxpayer or that they are providing the same services to the exact same customer base." The ILECs assert that the test set forth in *America West* is that similar property used in the same industry for the same or similar purpose cannot be treated differently. While the ILECs may overstate this argument, we agree that reversal is required on this issue.

¶ 37 As previously explained, although *America West* approves the consideration of competition, service type, and customer base in determining whether a classification violates the Uniformity Clause, these factors alone are not decisive. Again, the functional equivalency of the property is the paramount concern. *See Am. W.*, 179 Ariz. at 532–33 & n. 4, 880 P.2d at 1078–79 & n. 4. With respect to Arizona Telephone, Valley Telephone, Southwestern Telephone, and Copper Valley, the tax court did not consider whether any of their products are functionally similar to the products of their relevant competitors. Furthermore, it did not consider whether these Taxpayers and their competitors provide any similar services, nor whether even somewhat dissimilar services were sufficiently "similar [in their] physical attributes and productiveness." *See id.*, 179 Ariz. at 532–33, 880 P.2d at 1078–79. The tax court should have considered whether the subject services were "used the same way and for the same purpose by owners in the same industry." *Id.* Because the issue of functional equivalency was not addressed below, we remand to the trial court for a determination of that issue. While the other factors enumerated in *America West* should be taken into account as well, we emphasize that the weight of the analysis must be based upon the functional equivalency factor.

¶ 38 With respect to the two remaining Taxpayers, the tax court observed that Citi-

---

6. Because we find a violation of the Uniformity Clause as applied to Qwest, we do not consider the enforceability of the settlements and stipulations on valuation.

7. ADOR and the Counties argue that Qwest dominates the relevant market and thus no real competition exists. To buttress this argument, they invoke *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 985 P.2d 535 (App.1998). However, *Pasco* is a monopoly power case, not a tax discrimination case. It does not undermine the finding that Qwest is in direct competition with the relevant companies in the same industry.

zens Navajo and Citizens White Mountains provided intraLATA toll service for the relevant years, as did AT & T and MCI. Thus, the tax court found that these Taxpayers and their competitors used functionally identical property for functionally identical purposes. The tax court stated:

> This court has no doubt that the companies used different types of cable and switches in light of the rapidly changing technology, but agree with the taxpayers that the equipment is functionally equivalent. In *America West,* the Court was not concerned with the equipment used beyond that established by the statute, that the aircraft have a particular seating and payload capacity, to determine that the companies were using small commuter aircraft. The *America West* court in its determination did not rely upon the particular mechanics involved in the manufacture of the aircraft. The aircraft were functionally equivalent and this Court adopts that view here.

Despite this finding, the tax court found a lack of evidence that Citizens White Mountains and Citizens Navajo had direct competitors for intraLATA services in their respective market areas. Thus the tax court concluded that there was no discrimination because of the lack of direct competition and identical customer base. Again, the paramount functional equivalency issue was not addressed. We therefore remand this case with directions to the tax court to give primary consideration to the functional equivalency of the property at issue and to weigh this evidence against evidence of the other factors enumerated in *America West.*

## CONCLUSION

¶ 39 We affirm the tax court's ruling with respect to Qwest's discrimination claim. We reverse and remand for further consideration consistent with this opinion the tax court's rulings with respect to the ILECs' discrimination claims. In addition, we award Qwest its attorneys' fees and costs on appeal in accordance with A.R.S. §§ 12–348(B) and 12–

341 (2003), subject to its compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and JONATHAN H. SCHWARTZ, Judge Pro Tempore.*